J-S10019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH BENJAMIN BOTKE | |
| Appellant | Nos. 1364 EDA 2014; 1365 EDA 2014; 1366 EDA 2014 |

Appeal from the Judgments of Sentence dated March 17, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at Nos: CP-45-CR-0001933-2013;
CP-45-CR-0002411-2013; CP-45-CR-0002412-2013

BEFORE:  GANTMAN, P.J., STABILE, and PLATT,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 20, 2015**

Appellant Kenneth Benjamin Botke appeals from the March 17, 2014 judgments of sentence[1] entered in the Court of Common Pleas of Monroe County (trial court), after Appellant pled guilty to criminal attempt kidnapping, criminal attempt robbery of a motor vehicle, theft by unlawful taking (firearm), theft by unlawful taking (motor vehicle), escape, and theft

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] To the extent Appellant purports to appeal from the March 31, 2014 order denying his post-sentence motions, we note that in a criminal context, an appeal properly lies from the judgment of sentence, not an order denying post-sentence motions.  Accordingly, we have corrected the caption to reflect the March 17, 2014 judgments of sentence. **See Commonwealth v. Dreves**, 839 A.2d 1122, 1125 n. 1 (Pa. Super. 2003) (*en banc*).

by unlawful taking (movable property).[2] Upon review, we affirm the judgments of sentence.

On August 4, 2013, the Pocono Mountain Regional (PMR) Police charged Appellant with, *inter alia*, attempted kidnapping and attempted robbery at docket number 1933-2013 (First Case). The affidavit of probable cause accompanying the complaint provided in part:

> On Sunday, August 4, 2013 Officers from the [PMR] Police department responded to the Stillwater Lakes Community to attempt to apprehend [Appellant]. [Appellant] was wanted for [b]urglary and other charges stemming from offenses that occurred on August 3, 2013.
>
> Police received information that [Appellant] was seen at a residence on Nadine Boulevard. The resident on Nadine Boulevard reported that [Appellant] was armed with two black in color handguns. The resident reported that [Appellant] was wearing a black in color hooded sweatshirt and blue jeans.
>
> Police began to search the immediate area. [Appellant] was spotted in the woods. Police were dispatched. . . . The resident, [J.B.] reported that [Appellant] was armed with a handgun, pointed it at [J.B.] and told [J.B.] that [Appellant] wanted [J.B.'s] vehicle. [J.B.] stated that [J.B.] feared for his life and the life of his girlfriend. [J.B.] said he began to scream and cry for help. [J.B.] stated [Appellant] ran after [Appellant] saw police closing in. The vehicle that [Appellant] attempted to take was black in color Nissan Maxima. . . .
>
> The police continued to pursue [Appellant]. [Appellant] then entered a home belonging to [R.S. and T.S.]. . . . [They] immediately recognized [Appellant] as the fugitive they saw on the news. [They] had never met [Appellant] prior to this date and [Appellant] wasn't authorized to enter their home. [Appellant] was armed with two black in color handguns. [Appellant] pointed the firearms at the [couple] and told them that he needed a ride to Effort. [Appellant] took the black hooded sweatshirt off and threw it on the floor and said give it to

---

[2] 18 Pa.C.S.A. §§ 901(a), 2901(a)(2), 901(a), 3702(a), 3921(a), 3921(a), 5121(a), and 3921(a), respectively.

the cops. [Appellant] told [the couple] that the police were after him. [Appellant] told them that [he] wouldn't hurt them but they had to go with him. At gunpoint [Appellant] had them leave their residence and directed them to the vehicle located in the driveway. In a subsequent interview the victims reported that they feared for their lives. [R.S.] said [R.S.] was never so scared in my life. At approximately 1243 hours the police arrived as [Appellant] was attempting to force the [couple] into their vehicle. The vehicle is a black in color Nissan Sentra. . . . [Appellant] was brandishing both firearms pointing them at the [couple.] Police engaged [Appellant and] gave him verbal commands ordering [Appellant] to drop the guns and get down on his knees. [Appellant] refused to obey the verbal commands given and continued to threaten the police and the [couple.] At one point, [Appellant] placed the firearms to his own head as he told the police to kill him. The police utilized a taser to stop [Appellant's] actions. [Appellant] continued to resist and refused to let go of the firearms. The police physically forced the firearms from [Appellant's] grip.

   . . . . Police [later] determined that the handguns that [Appellant] possessed were actually BB-guns that looked like a real firearm.

Affidavit of Probable Cause, 8/5/13.

Thereafter, on September 9, 2013, in connection with the incident that gave rise to this case, the PMR Police department charged Appellant with, *inter alia*, theft by unlawful taking (movable property) at docket number 2412-2013 (Second Case). The affidavit of probable cause in the Second Case provided in pertinent part:

   On August 3, 2013 at 2045 hours, Officer Derek Metzger, took a theft complaint. Upon Officer Metzger's arrival . . . he spoke with complainant [J.P.] who advised that her son, [Appellant], had been stealing items from her other son's locked bedroom. The victim, identified as [A.B.], stated that [Appellant] had stolen [A.B.'s] Play Station 3 gaming system and 16 games over the last 3 days. [A.B.] stated that the door to [A.B.'s] bedroom is locked with a key. [A.B.] stated that the door is lockable from the inside with a turn lock and that the exterior of the door is opened with a key. When [J.P.] and [A.B.] were asked how they determined [Appellant] stole the items [J.P.] advised that she found the receipt in [Appellant's] pants to Game Stop where [Appellant] had traded the system and games in for money. [A.B.] advised that [A.B.] has had $20

in quarters stolen as well. [J.P.] advised [Appellant] was inside right now and was not aware that police were present.

[J.P.] and [A.B.] were asked if [A.B.] ever gave [Appellant] permission to enter his room or take the Play Station or sell any items. [A.B.] advised that [Appellant] was not permitted to be in his room and that [A.B.] did not give [Appellant] permission to take anything either. [A.B.] confirmed that [A.B.'s] door was locked and that a key is needed to unlock it from the hallway. [J.P.] went in and obtained the receipt from Game Stop that showed the Play Station and 10 games turned in for cash totaling $110.14.

[Appellant] was asked if [Appellant] had any knowledge of [A.B.'s] Play Station being removed from his room and [Appellant] advised that he took it and sold it as 'retaliation' for getting him arrested earlier in the week. [Appellant] was asked how he was able to get into [A.B.'s] bedroom if the door was locked and [Appellant] advised that he gets in just like [J.P.] does. [Appellant] stated that he usually uses a card, like a credit card, to slide in the jam and pop open the door. [Appellant] was asked if this is how he got into [A.B.'s] locked bedroom to get the Play Station and [Appellant] agreed.

After being interviewed [Appellant] fled and escaped from Officer Metzger.

Affidavit of Probable Cause, 9/9/13.

On the same day, *i.e.*, September 9, 2013, the PMR Police department also charged Appellant with, *inter alia*, theft by unlawful taking (firearm), theft by unlawful taking (motor vehicle), and escape at docket number 2411-2013 (Third Case). The affidavit of probable cause in the Third Case provided in part:

On Saturday, August 3, 2013 [PMR] Police department arrested [Appellant] for [b]urglary and related crimes. While Officer Metzger was at . . . Nadine Boulevard obtaining statements, [Appellant] stole Office Metzger's patrol vehicle and escaped from custody. The patrol vehicle was subsequently located in the Stillwater Lakes community. The vehicle . . . was . . . a 2008 Ford Expedition, marked and fully equipped police vehicle valued at approximately $30,000. Officers then discovered that [Appellant] had [also] stolen a [PMR] Police department issue[d] Remington 12 gauge shotgun . . . that had been secured inside the patrol vehicle, this shotgun is valued at $500.

- 4 -

On Sunday, August 4, 2013, at approximately 1244 hours, [Appellant] was located in Coolbaugh Township and arrested. Subsequently, Sgt. Lenning interviewed [Appellant, who] admitted to stealing the Remington 12 gauge shotgun and giving it to a friend, Wells. It should be noted that Wells was identified as, Khyree Johvan Caldwell.

Affidavit of Probable Cause, 9/9/13.

On December 24, 2013, Appellant pled guilty in all three cases. In the First Case, Appellant pled guilty to attempted kidnapping and attempted robbery. In his written guilty plea colloquy, Appellant acknowledged the facts and elements necessary for conviction for attempted kidnapping and attempted robbery. Specifically, Appellant acknowledged "[o]n August 4, 2013 in Coolbaugh Township, Monroe County, I attempted to take [R.S.] a substantial distance in an attempt to facilitate flight from the police. On the same day in the same municipality I attempted to take a vehicle possessed by [J.B.] without his permission." Guilty Plea Colloquy First Case, 12/24/13, at ¶ 3. Appellant also acknowledged that the deadly weapons enhancement (possession) would apply in the First Case at sentencing. *Id.* at ¶ 7. The Commonwealth *nolle prossed* the remaining charges in the First Case.

In the Second Case, Appellant pled guilty to theft by unlawful taking (moveable property). In the written guilty plea colloquy, Appellant acknowledged that "[o]n August 3, 2013 in Coolbaugh Township, Monroe County, Pa. I took a game system belonging to [A.B.]." Guilty Plea Colloquy Second Case, 12/24/13, at ¶ 3. The Commonwealth *nolle prossed* the remaining charges in the Second Case.

In the Third Case, Appellant pled guilty to theft by unlawful taking (firearm), theft by unlawful taking (motor vehicle), and escape. In the written guilty plea colloquy, Appellant acknowledged "[o]n August 3, 2013 in Coolbaugh Township, Monroe County Pennsylvania I took a 12 gauge shot gun belonging to [PMR] Police, as well as a patrol vehicle after I was lawfully arrested and removed myself from official detention." Guilty Plea Colloquy Third Case, 12/24/13, at ¶ 3. The Commonwealth *nolle prossed* the remaining charges in the Third Case.

Sentencing occurred on March 17, 2014. With respect to the First Case, the trial court sentenced Appellant to 36 to 84 months' imprisonment for attempted kidnapping and 24 to 48 months' imprisonment for attempted robbery. The sentences were to run consecutively. In the Second Case, the trial court sentenced Appellant to 3 to 12 months' imprisonment for theft by unlawful taking (movable property), running consecutively with the sentences imposed in the First Case. In the Third Case, the trial court sentenced Appellant to 18 to 36 months' imprisonment for theft by unlawful taking (firearm), 12 to 24 months' imprisonment for theft by unlawful taking (motor vehicle), and 15 to 36 months' imprisonment for escape. The sentence imposed in the Third Case was to run consecutively with those imposed in other cases. As a result of the consecutive nature of Appellant's sentence, his aggregate sentence is 108 to 240 months' imprisonment, *i.e.*, 9 to 20 years in prison.

Following the trial court's denial of Appellant's post-sentence motions on March 31, 2014, Appellant appealed to this Court on May 1, 2014. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors of complained of on appeal. Appellant complied. In response, the trial court issued a brief Pa.R.A.P. 1925(a) opinion, in which it merely stated:

> the [trial court] adopts in [its] entirety the Presentence Investigation Report [("PSI")] prepared in this matter, including the aggravating factors contained therein, and the arguments of the Commonwealth made at the time of sentencing. For those reasons, as well as for the reasons placed on the record by the [trial court] at the time of sentencing, all of which are contained in the Transcript of Proceedings dated March 17, 2014, [the trial court] believe[s] [it] has adequately, properly, and fully addressed the issues raised by [Appellant] on appeal.

Trial Court Opinion, 6/19/14.

On appeal,[3] Appellant challenges only the discretionary aspects of his sentence.[4] In so doing, he argues the aggregate sentence imposed is

_____

[3] When reviewing a challenge to the sentencing court's discretion, our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting ***Commonwealth v. Cunningham***, 805 A.2d 566, 575 (Pa. Super. 2002)), ***appeal denied***, 64 A.3d 630 (Pa. 2013).

[4] In the "statement of the questions involved" section of his brief, Appellant raises eight other issues for our review. Appellant's Brief at 9. Appellant, however, fails to develop them in the argument section of his brief, which

*(Footnote Continued Next Page)*

unreasonable and excessive given the trial court's (1) failure to give proper weight to his prior record score ("PRS") and juvenile history, and (2) application of non-existent aggravating factors. Appellant's Brief at 15.

Before we may address the merit of Appellant's case, we must decide the Commonwealth's contention that this appeal be quashed as untimely filed. In support of its argument, the Commonwealth points out that Appellant filed the instant appeal on May 1, 2014, after the trial court denied his post-sentence motions on March 31, 2014. Although we agree with the Commonwealth that Appellant's appeal is facially untimely, such untimeliness, however, may not be attributed to Appellant.

Generally, an appellate court cannot extend the time for filing an appeal, but may grant relief where there is a breakdown in the processes of the trial court. *See Commonwealth v. Patterson*, 940 A.2d 493, 498-99 (Pa. Super. 2007), *appeal denied*, 960 A.2d 838 (Pa. 2008). A breakdown in the processes of the court occurs "when the trial court or the clerk of courts depart[s] from the obligations specified in" Rule 720. *See id.* at 499. Here, the record indicates a breakdown in the trial court's operation that excuses the otherwise untimeliness of this appeal. Specifically, the trial

*(Footnote Continued)* ─────────────

barely spans two and one-half pages consisting largely of block quotes detailing case law and statutes. *See id.* at 14-16. Accordingly, we deem as waived the remaining eight arguments. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) ("The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119."), *appeal denied*, 982 A.2d 509 (Pa. 2007).

court's order denying Appellant's post-sentence motions failed to inform Appellant of his appeal rights and the time limits for taking an appeal. *See* Pa.R.Crim.P. 720(B)(4)(a). Accordingly, we decline to quash this appeal as untimely filed.

We now turn to Appellant's argument that the trial court abused its discretion in imposing an unreasonable and excessive aggregate sentence. In support of his argument, Appellant notes:

> At the time of sentencing [Appellant] appeared before the sentencing court with a [PRS] of zero. [Appellant] also had two adult paroles none of which were ever revoked.[5] Yet the lower court focused on [Appellant's] past as a juvenile. The lower court looked at [Appellant's] juvenile record which was fair. However, nothing in [Appellant's] young adult life depicted him as a[.][6]

Appellant's Brief at 15. Appellant essentially argues the trial court failed to give proper weight to his PRS of zero and improperly focused on his juvenile history.[7] Appellant also argues the trial court abused its discretion in applying aggravating factors when no such factors existed.

"Initially, we note that when a defendant enters a guilty plea, he or she waives all defects and defenses except those concerning the validity of

---

[5] As the Commonwealth notes, and the PSI confirms, Appellant was never granted parole nor was parole ever revoked. *See* Appellee's Brief at 8, n.9.

[6] As the blank space after the words "depicted him as a" indicates, Appellant failed to complete the last sentence of the quoted paragraph.

[7] The PSI reveals that Appellant was adjudicated delinquent for simple assault. *See* N.T. Sentencing, 3/17/13, at 17.

the plea, the jurisdiction of the trial court, and the legality of the sentence imposed." *Commonwealth v. Stradley*, 50 A.3d 769, 771 (Pa. Super. 2012) (citation omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted). "However, when the plea agreement is open, containing no bargained for or stated term of sentence, the defendant will not be precluded from appealing the discretionary aspects of h[is] sentence."[8] *Commonwealth v. Roden*, 730 A.2d 995, 997 n.2 (Pa. Super. 1999) (citation omitted).

It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see*

---

[8] The record in this case reveals that Appellant entered into open guilty pleas.

- 10 -

Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).  Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis.  *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001), *appeal denied*, 796 A.2d 979 (Pa. 2002).

Here, Appellant has satisfied the first three requirements of the four-part *Moury* test.  Appellant filed a timely appeal to this Court, preserved the issue on appeal through his post-sentence motions, and included a Pa.R.A.P. 2119(f) statement in his brief.[9]  We, therefore, must determine only if Appellant's sentencing issue raises a substantial question.

We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."  *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super.

---

[9] Rule 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."  Pa.R.A.P. 2119(f).

2008) (citation omitted), ***appeal denied***, 964 A.2d 895 (Pa. 2009). This Court does not accept bald assertions of sentencing errors. ***See Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Commonwealth v. Ahmad***, 961 A.2d 884, 886-87 (Pa. Super. 2008) (quoting ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005)). A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law[.]" ***Commonwealth v. Bullock***, 868 A.2d 516, 528 (Pa. Super. 2005) (citation omitted).

Here, Appellant's two-page Rule 2119(f) statement largely contains incantations of statutory provisions and pronouncements of conclusions of law. ***See*** Appellant's Brief at 12-13. To the extent Appellant raises any substantive argument in his Rule 2119(f) statement, it is limited to the following bald assertion of error: The trial court abused its discretion "in imposing an aggregate sentence of nine years to twenty-four[10] years in light of the charges that Appellant plead [sic] to, as well as the fact that he

_____

[10] As noted, Appellant's aggregate sentence was nine to twenty—not twenty-four—years' imprisonment.

- 12 -

has a zero [PRS]." Appellant's Brief at 13. Given the nature of his Rule 2119(f) statement, we cannot conclude he has raised a substantial question.[11] *See Bullock*, *supra*; *see Malovich*, *supra*; *see also Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) (holding that "a bald claim of excessiveness … will not raise a substantial question").

Even if we were to conclude Appellant raised a substantial question for our review, his claims are nonetheless without merit. As we stated earlier, our standard of review of a sentencing challenge is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa. Super. 2012) (citation omitted), *appeal denied*, 63 A.3d 774 (Pa. 2013).

Here, contrary to Appellant's assertions, the trial court properly considered Appellant's PRS of zero and his history with the juvenile courts.[12]

---

[11] Insofar as Appellant suggests the trial court failed to consider any mitigating factors in fashioning his sentence, he fails to articulate or identify what those factors are. Accordingly, we find no substantial question. *See Commonwealth v. Bershad*, 693 A.2d 1303, 1309 (Pa. Super. 1997) (finding absence of substantial question where appellant argued the trial court failed to adequately consider mitigating factors and to impose an individualized sentence).

[12] "A child who continues his pattern of serious and violent anti-social activity into adulthood, should not receive the benefit of a cloak of immunity

*(Footnote Continued Next Page)*

- 13 -

The trial court had the benefit of a PSI report,[13] which indicates that the trial court was aware of Appellant's character and circumstances, and weighed those considerations in imposing the sentence. **See Moury**, 992 A.2d at 171 ("Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.") (internal citation omitted). Referencing Appellant's stint in the juvenile system, the trial court remarked at sentencing:

> My point is, if I look at your conduct, the things that you did to your own family, you haven't been on the outside to even be able to show that you've changed, and don't give me the words because talk is cheap, it's the actions that really tell and are the measure of the man, but that's my point, **after everything that juvenile tried to do with you, and after having experienced that, you were still on the outside long enough to prove that you haven't changed**, and you were an adult and you kept making mistakes and you kept committing offenses.

N.T. Sentencing, 3/17/14, at 26-27 (emphasis added).

Furthermore, Appellant's argument that the record does not contain any aggravating factors is belied by the record itself. In fact, the trial court noted at sentencing that "multiple aggravating factors" existed. **Id.** at 30. Appellant also admitted in his brief that "the PSI indicated aggravating

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

regarding that behavior, when it is relevant to predicting future behavior and the public safety is at risk." **Commonwealth v. Lilley**, 978 A.2d 995, 1000 (Pa. Super. 2009) (citation omitted).

[13] Appellant did not object to the PSI.

factors to include the arrest of [Appellant] for unrelated charges, charges which never made it passed [sic] the preliminary hearing stage, as well as the fact that substantial police resources had to be used in [Appellant's] continuing cases."[14]   Appellant's Brief at 15-16.   Additionally, the record reveals that Appellant acknowledged the application of deadly weapons enhancement (possession) for purposes of sentencing in his attempted kidnapping and attempted robbery convictions.[15]   *See* Guilty Plea Colloquy First Case, 12/24/13, at ¶ 3.

In light of the foregoing, we conclude the trial court did not abuse its discretion in sentencing Appellant to nine to twenty years' imprisonment. Accordingly, we affirm the judgments of sentence.

Judgments of sentence affirmed.

_____

[14] Appellant suggests the trial court abused its discretion in considering as an aggravating factor the fact that Appellant was out on bail when he committed the offenses *sub judice* even though the case triggering the bail was dismissed.   We reject such suggestion as incredulous.   Appellant provides no legal authority—nor does our research yield any—to support this argument.   Additionally, we observe the dismissed case involved Appellant's family members as victims.   *See* N.T. Sentencing, 3/17/13, at 10.

[15] Appellant also suggests the trial court abused its discretion in considering as aggravating factors the theft of the PMR Police shotgun and Ford Expedition because they already "were part and parcel of the offense[s]." Appellant's Brief at 16.   Not only does Appellant fail to specify what those offenses are, but he also fails to support this argument with any record citation.   Assuming, *arguendo*, Appellant is correct, we still could not conclude the trial court abused its discretion, because the record contained other aggravating factors.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2015