**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Andre PHILLIPS, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 8, 2008.

Filed March 5, 2008.

Reargument Denied May 7, 2008.

---

Richard T. Brown, Jr., Philadelphia, for appellant.

Debra A. Breneman, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: KLEIN, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Andre Phillips, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for robbery,[1] possessing instruments of

1. 18 Pa.C.S.A. § 3701.

crime ("PIC"),[2] and criminal conspiracy.[3] We affirm Appellant's convictions, but vacate the judgment of sentence and remand for re-sentencing.

¶2 The relevant facts and procedural history of this appeal are as follows. Shortly after 11:00 p.m. on July 19, 2005, the victim had just parked his car near 47th and Pine Streets in Philadelphia. As the victim walked towards his home, he was approached by a young, African–American male on a bicycle. The man asked for directions, and the victim stopped to provide assistance. A second African–American male, also on a bicycle, approached the victim. The second male produced a gun and told the victim to empty his pockets. The first male took a DVD the victim had been carrying. The second male took the victim's wallet and cell phone. The robbers instructed the victim to "look the other way, just keep walking . . . ." (N.T. Trial, 5/12/06, at 47). The victim walked to his home and immediately called 911.

¶3 Officer James DeAngelo responded to the call, and the victim provided a description of the perpetrators as men approximately eighteen (18) to twenty (20) years old. The first male wore a white baseball jersey and hat. The second male also wore a hat. Both men rode BMX-type bicycles and fled southbound on 47th Street. Officer DeAngelo broadcast the descriptions over police radio. Officers Gregory Speck and Joseph Sees, who were both in plainclothes, were already on patrol in an unmarked vehicle near the crime scene. The officers began to survey the area, which was devoid of pedestrian and vehicular traffic.

¶4 Approximately ten (10) to twelve (12) minutes after the radio broadcast, the officers observed Appellant, and co-defendant Kareem Somerville, exiting a park near the intersection of 43rd and Chester Streets. Both men fit the general descriptions provided by the victim. Further, the suspects rode BMX-type bicycles and were traveling away from the crime scene. The officers followed the suspects at a distance, but the suspects kept looking over their shoulders. Appellant eventually removed a black backpack from his shoulder and threw it near a parked car. At that point, the officers exited their vehicle, identified themselves, and stopped the suspects. Out of caution, Officer Speck also drew his weapon.

¶5 Officer Speck had Mr. Somerville place his hands on a parked car. Officer Keller arrived as backup and conducted a pat-down frisk of Mr. Somerville. In Mr. Somerville's right front pants pocket, Officer Keller discovered a loaded handgun with its serial number filed off. Officer Speck retrieved the backpack Appellant had thrown. Inside the backpack, the officers found a white-and-orange-striped shirt which resembled a baseball jersey, a black T-shirt, and two baseball caps. Additionally, the backpack contained the victim's wallet and DVD. Shortly thereafter, the victim arrived at the scene and positively identified the suspects' bikes and the clothing recovered from the backpack.

¶6 The Commonwealth subsequently charged Appellant and Mr. Somerville with robbery and related offenses. On May 3, 2006, Appellant filed a suppression motion, claiming the police "had no authority to seize [Appellant] or the backpack, nor to search either him or it." (Motion to Suppress, filed 5/3/06, at 1). Appellant concluded all evidence obtained as a result of the search and seizure should be suppressed. Following a hearing on the matter, the court denied Appellant's motion.

---

2.  18 Pa.C.S.A. § 907.

3.  18 Pa.C.S.A. § 903.

¶ 7 On May 16, 2006, a jury convicted Appellant of robbery, PIC, and conspiracy. The jury found Appellant not guilty of carrying a firearm without a license. The court conducted Appellant's sentencing hearing on July 12, 2006. At that time, the court applied the "deadly weapon enhancement" provisions of the sentencing guidelines and sentenced Appellant to an aggregate term of seven and one-half (7½) to fifteen (15) years' imprisonment. Appellant timely filed a post-sentence motion on Monday, July 24, 2006. In his motion, Appellant challenged the court's application of the deadly weapon enhancement:

> [Appellant] moves for reconsideration of sentence because "deadly weapon enhancement—used" should not have applied to him: (a) because the jury acquitted him of violating the [U]niform [F]irearms [A]ct, neither enhancement ("used" or "possessed") should have been applied, and (b) because the weapon was not discharged by anyone and was at most possessed by someone other than [Appellant], the "used" enhancement was incorrect.

(Post–Sentence Motion, filed 7/24/06, at 1). By order entered August 4, 2006, the court denied Appellant's post-sentence motion.

¶ 8 Appellant timely filed the instant notice of appeal on August 10, 2006. On August 14, 2006, the court ordered Appellant to file a concise statement pursuant to Pa.R.A.P.1925(b), on or before August 31, 2006. Appellant timely filed his Rule 1925(b) statement on August 30, 2006.

¶ 9 Appellant now raises three issues for our review:

DID EXCLUDING THE PUBLIC FROM THE COURTROOM DURING *VOIR DIRE* VIOLATE THE PUBLIC TRIAL PROVISIONS OF THE FEDERAL AND STATE CONSTITUTIONS?

DID THE COURT ERR IN REFUSING TO INSTRUCT ON THE LESSER–INCLUDED OFFENSE OF THEFT?

DID THE COURT ERR IN APPLYING THE "MANDATORY MINIMUM" SENTENCE AND THE "DEADLY WEAPON ENHANCEMENT," AND WAS THE EVIDENCE INSUFFICIENT BY THE SAME LOGIC FOR PIC?

(Appellant's Brief at 2).

¶ 10 In his first issue, Appellant contends the constitutional right of access to court proceedings extends to *voir dire.* Appellant complains the court violated this right when it limited public access to *voir dire.* Appellant insists that where a court excludes the public: 1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; 2) the closure must be no broader than necessary to protect that interest; 3) the court must consider reasonable alternatives to closure; and 4) the court must make findings to support the closure. Appellant argues the court did not satisfy the aforementioned elements; instead, the court overreacted after the prosecutor remarked that Appellant's acquaintances had made her feel "uncomfortable" during an exchange outside the courtroom. Appellant concludes the court erred by limiting his associates' access to the courtroom during *voir dire*, and this Court must award a new trial. We disagree.

¶ 11 "A trial court's decision regarding access to judicial ... proceedings is within the sound discretion of the trial court, and we will reverse only if the trial court abuses its discretion." *Commonwealth v. Martinez*, 917 A.2d 856, 859 (Pa.Super.2007). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable

or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Id.* (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000)).

■ ¶ 12 "The Sixth Amendment right to a public trial in a criminal case is binding on the states through the due process clause of the Fourteenth Amendment." *Commonwealth v. Constant*, 925 A.2d 810, 816 (Pa.Super.2007), *appeal denied*, 594 Pa. 675, 932 A.2d 1285 (2007). The Pennsylvania Constitution likewise guarantees an accused's right to a public trial. The right to a public trial is applicable to *voir dire* proceedings.

* * *

In determining whether the *voir dire* procedure ... violated [the defendant's] right to a public trial, we keep in mind that such right serves two general purposes: (1) to prevent an accused from being subject to a star chamber proceeding; and (2) to assure the public that standards of fairness are being observed. The public's right to attend a trial is not absolute, and exists as a guarantee of fairness in judicial conduct during criminal court proceedings. Where trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable public, they may always place reasonable restrictions on access to the courtroom, so long as the basic guarantees of fairness are preserved such as by the presence of the press and the making of a record for later review.

*Id.* at 816–17 (internal citations and quotation marks omitted). "The question in a particular case is whether that control [over the courtroom] is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places." *Commonwealth v. Berrigan*, 509 Pa. 118, 501 A.2d 226 (1985), *cert. denied*, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 173 (1989) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n. 18, 100 S.Ct. 2814, 2830 n. 18, 65 L.Ed.2d 973, 993 n. 18 (1980)).

■ ¶ 13 Instantly, jury selection commenced on May 8, 2006. At the conclusion of the lunch recess, the prosecutor requested that the court dismiss the current panel. The prosecutor indicated several individuals associated with one of the defendants had assembled near the jury room. One of the individuals said to the prosecutor: "Are you going to look at me now? You finally looked at me." (N.T. Voir Dire, 5/8/06, at 19). The individuals also gave "nasty looks" to the panel when the court reporter ushered them into the jury room. (*Id.* at 20). The court reporter informed the judge these individuals had created a "hostile spirit" in the room. (*Id.*)

¶ 14 The court responded by dismissing the jury panel. Further, the court stated it intended to limit future access to the courtroom to "those who are essential which is family members, close relatives...." (*Id.*) Appellant's counsel immediately objected, claiming Appellant was entitled to have members of the public present. At that point, the court explained:

And if they're being disruptive, or if one of the Sheriffs feel it's a security issue, then they're not going to be permitted. I'm not going to jeopardize myself or anyone else in this courtroom.

(*Id.* at 21).

¶ 15 Over the next two days, the court conducted and completed *voir dire*. The notes of testimony from these proceedings do not demonstrate any further problems related to the conduct of spectators or that

any individuals were denied access to the courtroom, despite the court's stated intention. Under these circumstances, the record belies the occurrence of any partial closure of the courtroom. Further, the judge took reasonable action to facilitate the orderly administration of justice in the courtroom, and the notes of testimony provide a sufficient record for subsequent review of the proceedings. *See Constant, supra.* Thus, Appellant's right to a public trial remained intact. Accordingly, Appellant is not entitled to relief on his first claim.

■ ¶ 16 In his second issue, Appellant asserts the victim did not identify either defendant as having robbed him. Further, Appellant contends the only direct evidence linking him to the robbery is the fact that the police found the victim's belongings in Appellant's discarded backpack. Although the Commonwealth wanted the jury to infer that Appellant and Mr. Somerville had robbed the victim, Appellant insists it was just as likely that the codefendants "were merely two unlucky mopes who came upon or otherwise received" the stolen property. (Appellant's Brief at 8). As such, Appellant argues the jury might have found him guilty of theft by receiving stolen property, and not guilty of robbery, because there was no direct evidence that Appellant and his cohort were the robbers. Appellant concludes the court erred by refusing to instruct the jury on receiving stolen property. We disagree.

■ ¶ 17 "There is no requirement for the trial judge to instruct the jury pursuant to every request made to the court." *Commonwealth v. Newman,* 382 Pa.Super. 220, 555 A.2d 151, 158–59 (1989), *appeal denied,* 540 Pa. 580, 655 A.2d 512 (1995). "In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court

abused its discretion or committed an error of law." *Commonwealth v. DeMarco,* 570 Pa. 263, 271, 809 A.2d 256, 260–61 (2002).

■ ¶ 18 "A defendant is entitled to a charge on a lesser-included offense only where the offense has been made an issue in the case **and the evidence would reasonably support such a verdict.**" *Commonwealth v. Barnes,* 871 A.2d 812, 823 (Pa.Super.2005), *affirmed,* 592 Pa. 301, 924 A.2d 1202 (2007) (emphasis in original). "Instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." *Commonwealth v. Patton,* 936 A.2d 1170, 1176 (Pa.Super.2007).

¶ 19 A person is guilty of robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a)(1)(ii). A person is guilty of theft by receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a).

¶ 20 Instantly, the victim described the robbers to Officer DeAngelo: two African–American males, 18 to 20 years old, one carrying a gun, both fleeing on BMX-type bicycles. The first male wore a white baseball jersey and hat. The second male also wore a hat. Shortly thereafter, Officers Speck and Sees saw Appellant and Mr. Somerville riding BMX-type bicycles away from the area where the robbery had occurred. The officers also observed Appellant remove his backpack and toss it near a parked car. Ultimately, the officers stopped the suspects and discovered

the victim's belongings in Appellant's backpack. Appellant's backpack also contained the suspects' clothing, which the victim had described.

¶ 21 Although Appellant insists he could have serendipitously found the victim's belongings without actually committing the robbery, the victim testified that he was able to identify the suspects' bikes, clothing, and weapon shortly after the robbery:

[VICTIM]: Yes, I saw two individuals with police officers. I saw two bikes on the floor, and during that time, one of the police officers asked me if I recognized the bikes. And I did. And they actually showed me the shirt that I described earlier. And I recognized the shirt. Then they showed me my belongings and asked me if those were mine.

[COMMONWEALTH]: Okay. Did you recognize the bikes as the bikes that the robbers were riding?

[VICTIM]: Yes, I did.

[COMMONWEALTH]: did you recognize the white striped baseball jersey?

[VICTIM]: Yes, I did.

[COMMONWEALTH]: All right. Were you shown anything else to identify?

[VICTIM]: I was actually shown the gun which I identified.

(N.T. Trial, 5/12/06, at 44–45). Here, the victim identified the suspects' bicycles, clothing, and weapon shortly after the robbery. Further, Mr. Somerville carried the weapon described by the victim. This circumstantial evidence supports the inference that Appellant and Mr. Somerville actually committed the robbery.

¶ 22 To the extent Appellant suggests some other individuals could have robbed the victim and dumped his belongings in the park, Officer Speck provided the following testimony during cross examination:

[DEFENSE COUNSEL]: Do people usually go to that park after they rob somebody, does that park play any significance?

\* \* \*

[OFFICER]: Actually, it does. My partner and I have checked the park before because it's kind of dimly lit.

[DEFENSE COUNSEL]: So if someone was going there to ... hide out or something, or if someone was being chased for a robbery, would they go through the park?

[OFFICER]: They could. It's been done before.

(N.T. Trial, 5/15/06, at 84). Although the officer acknowledged that the park could have served as a dimly lit escape route, this testimony falls short of supporting a verdict for theft by receiving stolen property. *See* 18 Pa.C.S.A. § 3925(a). Absent more, the evidence adduced at trial did not warrant a charge on theft by receiving stolen property. *See Patton, supra; Barnes, supra.* Accordingly, Appellant is not entitled to relief on his second claim.

¶ 23 In his third issue, Appellant claims the court misapplied the sentencing guidelines when imposing his sentence. Specifically, Appellant contends the court erred when it utilized the deadly weapon enhancement guidelines to impose an aggregate term of seven and one-half (7½) to fifteen (15) years' imprisonment. Appellant says that by the logic set forth in *Commonwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95 (2007), the deadly weapon enhancement cannot be applied to the sentence of an unarmed codefendant. As such, Appellant insists he cannot be held liable for the gun the police recovered from Mr. Somerville. Appellant concludes this Court must vacate his sentence and remand for re-sentencing. Appellant's claim challenges the discretionary aspects

of his sentence. *See Commonwealth v. Pennington,* 751 A.2d 212 (Pa.Super.2000), *appeal denied,* 564 Pa. 729, 766 A.2d 1246 (2000) (stating challenge to application of weapon enhancement implicates discretionary aspects of sentence).

¶ 24 Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra,* 752 A.2d 910, 912 (Pa.Super.2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa. R.A.P.902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Martin,* 416 Pa.Super. 507, 611 A.2d 731, 735 (1992) (most internal citations omitted).

¶ 25 When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617 (2002); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of fac-

tors impinging on the sentencing decision to exceptional cases.' " *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385, 1387 (1989) (*en banc*) (emphasis in original).

¶ 26 The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Anderson,* 830 A.2d 1013 (Pa.Super.2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13 (quoting *Commonwealth v. Brown,* 741 A.2d 726, 736 (Pa.Super.1999) (*en banc*), *appeal denied,* 567 Pa. 755, 790 A.2d 1013 (2001)). A substantial question is raised where an appellant alleges his sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement. *Pennington, supra.*

¶ 27 Here, Appellant timely filed his appeal and properly preserved his issue in a timely post-sentence motion and a Rule 2119(f) statement. Appellant's claim regarding the erroneous application of the deadly weapon enhancement appears to raise a substantial question as to the discretionary aspects of his sentence. *See id.*

¶ 28 "In general, the imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal." *Commonwealth v. Hoover,* 909 A.2d 321, 322 (Pa.Super.2006).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that

the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland,* 875 A.2d 1175, 1184 (Pa.Super.2005), *appeal denied,* 586 Pa. 723, 890 A.2d 1057 (2005) (quoting *Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*)) (internal quotation marks and citations omitted).

¶ 29 The sentencing code includes the following deadly weapon enhancement section:

### § 303.10. Guideline sentence recommendations: Enhancements

(a) Deadly Weapon Enhancement.

(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17). An offender has possessed a deadly weapon if any of the following were on the offender's person **or within his immediate physical control:**

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

\* \* \*

(1) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.18). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

\* \* \*

204 Pa.Code § 303.10(a)(1)(i), (2)(i) (emphasis added).

¶ 30 In *Pennington, supra,* the defendant and his cohorts hatched a plot to commit a robbery. The men obtained a sawed-off .22 caliber rifle and roamed the streets of West Philadelphia until they found a suitable victim. One of Appellant's cohorts threatened the victim at gunpoint while the others went through the victim's pockets, taking his keys and identification. The police observed the robbery from a vehicle stopped nearby, and the defendant and another cohort fled. A third cohort grabbed the rifle and shot and killed the victim. Following trial, the jury found the defendant guilty of robbery, conspiracy, and theft. Applying the deadly weapon enhancement, the court sentenced the defendant to an aggregate term of ten (10) to thirty (30) years' imprisonment.

¶ 31 On appeal, the defendant argued that he did not have actual possession of the gun used to kill the victim, and the gun was not within his immediate control when the crime was committed. The defendant concluded the trial court erred in applying the deadly weapon enhancement, and the resulting sentence was excessive. This Court, however, reasoned as follows:

[H]ere, [the defendant] and his co-conspirators all had knowledge of the existence of a weapon and had ready access to it during the robbery. Likewise, in [*Commonwealth v. Hatcher,* 746 A.2d 1142 (Pa.Super.2000)], we applied the weapons enhancement to an assault and reckless endangerment conviction where "[a]ppellant was shoulder-to-shoulder with the other two assailants, who handed the gun back and forth." We determined that "[a]ppellant easily could have walked out and taken possession of the gun at any time." Similarly here, [the defendant] could easily have been given

or taken the gun at any moment while the group assaulted the victim.

While [the defendant] claims that [*Commonwealth v. Greene*, 702 A.2d 547 (Pa.Super.1997)] supports his contention that the court erred in applying the weapons enhancement, this reliance is misplaced. There, the defendant waited in a car while his co-conspirator attempted to rob a jewelry store. On appeal, we found that the fact that the defendant knew that the robber had a firearm was insufficient to warrant imposition of the weapons enhancement. We held that "the deadly weapon enhancement [was] inapplicable ... because the gun was neither on appellant's person nor within his immediate physical control at any time during the perpetration of the robbery." By contrast, in the present matter, there was evidence that [the defendant] was in the immediate vicinity of his co-conspirators when the gun was used to threaten the victim.

*Id.* at 216–17 (some internal citations omitted). Thus, this Court held that the trial court properly applied the deadly weapon (possessed) enhancement.

■ ¶ 32 Instantly, two men approached the victim on the night of the robbery. One man carried a handgun and told the victim to empty his pockets. Thereafter, the robbers took the victim's belongings and fled. Like *Pennington,* the evidence demonstrated that Appellant was in the immediate vicinity of his co-conspirator when the gun was used to threaten the victim. Appellant had knowledge of the existence of the weapon, and he "could easily have been given or taken

the gun at any moment" during the robbery. *See id.* As such, the court properly applied a deadly weapon enhancement.[4] *Id.*

¶ 33 Further, Appellant's reliance on *Dickson* is misplaced. In *Dickson,* the defendant restrained the victim while his cohort pulled a gun, placed it against the victim's head, and demanded the victim's money and car keys. The jury found the defendant guilty of conspiracy and not guilty of robbery. The court subsequently sentenced the defendant to a five (5) year mandatory minimum term, pursuant to 42 Pa.C.S.A. § 9712(a) (stating any person convicted of crime of violence shall, if that person visibly possessed firearm during commission of offense, be sentenced to minimum sentence of at least five years of total confinement). Our Supreme Court, however, ultimately concluded the mandatory minimum in Section 9712 does not apply to unarmed co-conspirators.

¶ 34 Unlike the defendant in *Dickson,* Appellant did not receive a mandatory minimum sentence under Section 9712. Rather, the court sentenced Appellant pursuant to the deadly weapon enhanced sentencing guidelines. Whereas the application of Section 9712 is limited to those who "visibly possessed a firearm," the enhancement applies to a weapon "on the offender's person or within his immediate physical control." 42 Pa.C.S.A. § 9712; 204 Pa.Code § 303.10(a)(1). Thus, Appellant's conduct falls within the broader ambit of Section 303.10(a)(1).

■ ¶ 35 Nevertheless, pursuant to Section 303.10(a)(1), the court should have utilized the "DWE/Possessed Matrix

---

4. In his reply brief, Appellant claims the Commonwealth's reliance on *Pennington* is "not persuasive." (Appellant's Reply Brief at 6). Appellant asserts, *inter alia, Pennington* addressed a prior version of the deadly weapon enhancement. We emphasize, however, that

*Pennington* analyzed the phrase "within his immediate physical control." *Id.* at 216–17. Because "within his immediate physical control" remains in Section 303.10(a)(1), *Pennington* applies to the instant case.

(§ 303.17)" to determine the applicable sentencing guidelines. Our review of the sentencing transcript reveals the court relied upon the "DWE/Used Matrix (§ 303.18)." Specifically, Appellant's offense gravity score ("OGS") was ten; his prior record score ("PRS") was "RFEL." (N.T. Sentencing, 7/12/06, at 2). Under the DWE/Possessed Matrix, the standard range of the guidelines was 81–93 months. The court, however, announced: "The guideline range is 90 to 102." (*Id.* at 10). The range of 90–102 months represents the standard range of the guidelines for an offender with an OGS of ten and a PRS of RFEL under the DWE/Used Matrix. Thus, the court utilized the wrong guidelines because Appellant did not "use" the gun, he only "possessed" it.

[redacted] ¶ 36 Accordingly, we affirm Appellant's convictions, but vacate his judgment of sentence and remand for re-sentencing. *See Commonwealth v. Dobbs,* 452 Pa.Super. 488, 682 A.2d 388, 393 (1996) (stating: "Where we determine that a sentence must be corrected, this Court has the option of amending the sentence directly or remanding it to trial court for re-sentencing. If a correction by this Court may upset the sentencing scheme envisioned by the trial court, the better practice is to remand").[5]

¶ 37 Judgment of sentence vacated; case remanded for further proceedings. Jurisdiction is relinquished.

[redacted]

5. Appellant's brief also contains a conclusory, two-sentence argument challenging the sufficiency of the evidence to support his PIC conviction. Specifically, Appellant contends that by the logic of *Dickson* and *Greene,* an unarmed co-defendant cannot be convicted of PIC. Appellant, however, has failed to provide additional argument and citation to relevant authority in support of this claim. Absent more, Appellant's challenge is waived. *See Commonwealth v. Hakala,* 900 A.2d 404 (Pa.Super.2006), *appeal denied,* 589 Pa. 737, 909 A.2d 1288 (2006) (stating failure to offer analysis or case citation in support of relief results in waiver of claims).