J-S23039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STEPHEN L. MASTEN, | : | |
| | : | |
| Appellant | : | No. 917 EDA 2016 |

Appeal from the Judgment of Sentence February 22, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0005766-2014

BEFORE: OLSON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED MAY 05, 2017**

Stephen L. Masten ("Masten") appeals from the judgment of sentence imposed after a jury convicted him of attempted murder, aggravated assault, criminal conspiracy, and burglary.[1] We affirm.

The trial court set forth the relevant facts underlying this appeal as follows:

> On May 6, 2012, David Phillips (herein "[the] victim") was assaulted by [Masten] and his co-conspirator, Frank Cassiano [("Cassiano")], [while the victim was asleep in his residence, located at] 5928 Shisler Street [in Philadelphia]. Around 10:30 p.m. [], [the victim] awoke to the sound of footsteps and saw [Masten] and Cassiano turn on his bedroom lights and say, "We're going to kill you motherfucker." Cassiano hit the victim's head with a foot-long military shovel. [Masten] then strangled the victim, while Cassiano went through the victim's belongings. Afterwards, [Masten] again strangled the victim with a piece of cloth, then smothered him with a pillow. During the tussle, the victim heard [Masten] ask Cassiano for help. The victim resisted, using a blackjack on [Masten]. [Masten] yanked the blackjack out of the victim's hand while Cassiano held the victim

---

[1] *See* 18 Pa.C.S.A. §§ 901(a), 2702, 903, 3502.

down. [Masten] then placed his thumbs into the victim's eyes and said "… we're going to kill you." The victim testified that his "eye-balls popped and the fluid popped out of [his] eyes." He heard [Masten] say, "I blinded that fucking bastard." [Masten] and Cassiano then laughed[,] and [Cassiano] screamed as they left, "Remember who did this to you motherfucker … we hope you die motherfucker." The victim eventually felt his way out of the house and asked a neighbor to call the police.

The victim sustained substantial injuries. He received 52 staples on his head at Einstein Hospital, lost his pupil in his right eye, and his left eye's color changed from green to blue. He is permanently blinded in both eyes and sustained a permanent scar from the top center of his head to his eyebrows. The victim received treatment at Wills Eye Institute for two months before he was released to a nursing home in Montgomery County for two months. He then attended Colorado Center for the Blind for ten months and consulted a psychologist for his depression for a period of time.

The Commonwealth called several witnesses to testify. Joseph Hamer [("Hamer")], Cassiano's second cousin, testified that [Masten] told him that "your cousin have nothing to worry about … if anything, I'll take the rap." [According to Hamer, Masten] had also mentioned "wanting to do something to [the victim]" for weeks. Furthermore, Wilbert Lauer, the victim's roommate and landlord, testified that there had been ongoing problems between the victim and [Masten]. On the night of the incident, he testified that he came home to a "kicked-in or pushed-in" front door. Detective Erika Griffin also testified that the front door was kicked in[,] and investigators found the front door bolt "jimmied" open.

Michael Cook [("Cook")], an acquaintance to both the victim and [Masten], testified that [Masten] and Cassiano stayed at his house approximately two weeks after this incident. [Masten] told Cook that he "poked [the victim's] eye out" and felt his late wife "looking down on him and smiling." Cook immediately asked [Masten] to leave his house. Within two weeks, Cook found a black bag stashed in his closet that belonged to [Masten], which [contained] a bomber jacket with a

distinctive white supremacy patch,[2] boots, and pants. Forensic investigators found DNA evidence matching the victim, Cassiano, and [Masten] on the bomber jacket. The jacket also matched the description of [that which Masten had been wearing on the date of the attack] provided by the victim.

Trial Court Opinion, 7/8/16, at 2-4 (footnote added, citations to record omitted).

The police arrested Masten at his residence a few weeks after the attack. The Commonwealth thereafter charged him with the above-mentioned offenses. The matter proceeded to a jury trial, at the close of which the jury convicted Masten of all counts. On February 22, 2016, the trial court sentenced Masten to an aggregate prison term of 40 to 80 years. Masten timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal. The trial court then issued a Pa.R.A.P. 1925(a) Opinion.

Masten now presents the following issue for our review: "Is [Masten] entitled to an arrest of judgment on the charge of attempted murder and

_____

[2] The victim testified at trial that he, Masten, and Cassiano were all members of groups associated with white supremacist views.

- 3 -

burglary,[3] where the evidence was insufficient to sustain the verdict?" Brief for Appellant at 3 (footnote added).

Our standard of review of a sufficiency of the evidence claim is well settled:

> Our standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, w[as] sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

*Commonwealth v. Cruz*, 71 A.3d 998, 1006 (Pa. Super. 2013) (citation and brackets omitted).

This Court has outlined what the Commonwealth must prove in order to sustain a conviction for attempted murder as follows:

> Under the Crimes Code, "[a] person commits an attempt when[,] with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done[,] and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence. The

---

[3] Though Masten's Statement of Questions Involved section purports to challenge the sufficiency of the evidence supporting his burglary conviction, his Argument section challenges only the attempted murder conviction. Accordingly, Masten has waived any challenge to his burglary conviction. *See*, *e.g.*, *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.")

law permits the fact[-]finder to infer that one intends the natural and probable consequences of his acts[.]

***Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa. Super. 2008) (quotation marks and some citations omitted).

In the context of a sufficiency of the evidence claim concerning attempted murder, this Court has explained that

> [as] intent is a subjective frame of mind, it is of necessity difficult of direct proof. We must look to all the evidence to establish intent, including, but not limited to, [the] appellant's conduct as it appeared to his eyes. … Moreover, depending on the circumstances[,] even a single punch may be sufficient.

***Commonwealth v. Holley***, 945 A.2d 241, 247 (Pa. Super. 2008) (citation and brackets omitted); ***see also Commonwealth v. Chambers***, 980 A.2d 35, 47 (Pa. 2009) (stating that "the specific intent to kill can be formed in a fraction of a second …."). "Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another." ***Commonwealth v. Stokes***, 78 A.3d 644, 650 (Pa. Super. 2013) (citation omitted).

Here, Masten challenges only the specific intent element of attempted murder, asserting that although he "had fully formed the intent to attack the victim[], [] from the record itself, he did not have the intent to kill the victim[,] and we know that from the things that he said at the scene of the offense." Brief for Appellant at 8. Specifically, Masten emphasizes the victim's testimony that, when Masten and Cassiano were leaving the victim's house after the brutal attack, the victim "heard [Cassiano] scream

'Remember who did this to you motherfucker,' and [Masten] laughing[,] and they said as they were leaving, 'We hope you die motherfucker.'" *Id.* at 10 (quoting N.T., 10/15/15, at 22). According to Masten,

> if [Masten and Cassiano] wanted [the victim] to remember who did this to him, then [the victim] would have to survive and live. [The victim] was conscious and alive at the time that [Masten and Cassiano] left. That is completely inconsistent with having an intent to kill.

Brief for Appellant at 10. Finally, Masten argues that "even though the actions taken were gross and heinous, it does not follow, *a fortior*[]*i*, that anyone was trying to kill [the victim] by popping his eyes out." *Id.* at 11; *see also id.* (asserting that "[t]here … was a shovel or pipe present[,] and the attack with either of those weapons, [] if kept up, would have split open the skull of [the victim] and he would have bled out at the scene. However, [Masten and Cassiano] did not undertake those actions.").

In its Opinion, the trial court determined that the Commonwealth presented "ample evidence" that Masten possessed specific intent to kill the victim, reasoning as follows:

> [Masten] used his bare hands, a piece of cloth, and a pillow to strangle and smother the victim. He also gouged out the victim's eyes, leaving the victim to bleed profusely. Cassiano's use of a shovel as a deadly weapon is also imputed to [Masten] as well. *See Commonwealth v. Phillips*, 946 A.2d 103, 114 (Pa. Super. 2008) (holding that conspirator's use of deadly weapon[] was imputable to co[-]conspirator because the weapon was in the defendant's immediate vicinity and accessible during the crime). Further, a shovel is considered a "deadly weapon" under 204 Pa. Code § 303.10, which defines a deadly weapon to include "any device, implement, or instrumentality … capable of producing death or serious bodily injury[,] where the court

determines that the offender intended to use the weapon to threaten or injure another individual." Here, Cassiano hit the victim's head, an indisputably vital part of the body, with a shovel. This evidences a specific intent to kill. *See Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645 (2008) (holding the finder of fact in [a] prosecution for first-degree murder may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body.)

Trial Court Opinion, 7/8/16, at 6 (footnote citations moved to body, citations to record omitted). We agree with the trial court's reasoning and determination.

Masten's using his thumbs to gouge the victim's eyeballs out, strangling him, and then leaving him seriously injured, permanently blind, and bleeding profusely, was independently sufficient to prove that Masten intended to kill the victim. *See, e.g., Chambers*, 980 A.2d at 47-48 (holding that the evidence was sufficient to establish specific intent to kill where the defendant repeatedly beat the three-year-old victim, threw her into a metal radiator, which struck her head, and leaving her to suffocate); *Commonwealth v. Shank*, 883 A.2d 658, 665 (Pa. Super. 2005) (stating that there was sufficient evidence to establish specific intent to kill where the unarmed defendant participated with other men in severely beating the victim about the head and face numerous times, which fractured his skull and caused brain hemorrhaging).

Moreover, Masten's statements to the victim unequivocally communicated Masten's intent to kill. *See Commonwealth v.*

*Hornberger*, 270 A.2d 195, 198 (Pa. 1970) (stating that a jury may find specific intent to kill from a defendant's words, conduct of the defendant, and the attendant circumstances). Specifically, the victim testified that, while Masten was gouging his eyeballs, Masten had said "we're going to kill you." N.T., 10/15/15, at 18; *see also id.* at 11 (wherein the victim stated that Masten and Cassiano, upon first entering the victim's room, had both stated "we're going to kill you motherfucker.").

Finally, contrary to Masten's claim, the jury was under no obligation to (1) accept that Cassiano purportedly stated to the victim upon leaving the scene, "Remember who did this to you motherfucker," N.T., 10/15/15, at 22; or (2) find *Cassiano's* purported statement in this regard to be indicative of *Masten's* intent to kill the victim, which was clearly established by Masten's brutal conduct and express words.

Accordingly, viewing the trial evidence in the light most favorable to the Commonwealth as verdict winner, there was ample evidence allowing the jury to conclude that Masten had acted with the specific intent to kill the victim, and to convict him of attempted murder. Thus, Masten's challenge to the sufficiency of the evidence fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2017