J. S17035/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
REYNALDO NUNEZ-TORRES, : No. 1882 MDA 2019
:
Appellant :


Appeal from the Judgment of Sentence Entered September 10, 2019,
in the Court of Common Pleas of Berks County
Criminal Division at No. CP-06-CR-0000555-2019


BEFORE: PANELLA, P.J., STABILE, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JUNE 15, 2020**

Reynaldo Nunez-Torres appeals from the September 10, 2019 judgment

of sentence of three to six years' imprisonment imposed after a jury found

him guilty of criminal conspiracy to commit robbery.[1] After careful review, we

affirm.

The trial court summarized the relevant facts of this case as follows:

> On December 2, 2017, Christopher Stirone
> [(hereinafter, "the victim")] was employed as a
> deliveryman for a local Chinese food restaurant.
> Between 7:00 p.m. and 8:00 p.m., [the victim] was
> called out for a delivery at 2001 Highland Avenue,
> Reading, Berks County, Pennsylvania ("Residence").
> The Residence is a secluded, single home located on
> a property containing bushes and trees. Highland
> Avenue is a lightly traveled road. [The victim] arrived
> at the Residence and parked in the street. He noticed
> that there was only one light on inside of the

---

[1] 18 Pa.C.S.A. § 903(a)(1) (to commit § 3701(a)(1)(ii)).

Residence. He called the telephone number on the delivery receipt and a male voice informed him that people were at the Residence and he should come to the front door. The delivery receipt also identified the name of the individual who appeared on the restaurant's caller ID, Dimitry Taylor.

As [the victim] approached the Residence, three men with flashlights jumped out from the bushes on the right side of the house. [The victim] stated that they were sixty to seventy feet from the road when he observed them. They were all wearing knit hats and face masks. One of them put a gun to [the victim]'s back and told him not to move or he would kill him. A second man put a knife to his chest and instructed [the victim] to remove his hands from his pockets. This same man then moved the knife to [the victim]'s throat until [the victim] complied. The man then went through [the victim]'s pockets and removed money as well as a small pocketknife. He told [the victim] that this [is not] worth dying for and that he should stay quiet. The man with the gun told [the victim] to drop the bag of Chinese food he was carrying. [The victim] heard him pick up the bag. During the incident, [the victim] was hit in the head with the gun and told to shut up or he was going to die. The third individual went through [the victim]'s vehicle and took approximately $300.00, [the victim]'s wallet and car keys. After the third individual signaled that he was done going through [the victim]'s vehicle, two of the three men started to walk away. The man with the gun pointed [the victim] in the opposite direction for him to start walking. [The victim] was instructed to look forward, not to turn around until the men were gone, and to stay put or he would die. After [the victim] heard the men running away, he yelled for help and banged on his neighbor's door. The men all left together. The police were contacted and arrived on scene and met with [the victim] within five minutes. [The victim]'s wallet was returned to his front porch three days later with only the cash missing.

While at the Residence, Officer Bryan Cilento ("Officer Cilento") of the Central Berks Regional Police Department located a Corona beer bottle. The beer bottle was discovered on the same side of the Residence that the men emerged from. The bottle was found ten feet behind the location where the victim first observed the three men. Officer Cilento noticed that there was foam on the liquid inside of the beer bottle[,] which indicated that it had been moved or shaken. He also felt the inside of the beer bottle with his finger as he emptied its contents and found that it was cold. In January of 2018, the beer bottle was sent by law enforcement to be processed for fingerprints. In March of 2018, the lab report indicated that there was a print on the beer bottle individualized to [appellant].

In December of 2017, Detective [Sergeant] Deron Manndel ("Detective Manndel") of the Central Berks Regional Police Department was assigned to investigate the robbery that occurred on December 2, 2017. As part of his investigation, Detective Manndel obtained a court order for the account associated with the cell phone number located on the delivery receipt. This was the same number used to place the Chinese food order and dialed by the victim when he arrived at the Residence. Detective Manndel learned that an individual by the name of Dimitry Taylor was identified as the account holder. However, in March of 2018, after learning that the print on the beer bottle was individualized to [appellant], Detective Manndel entered the cell phone number into a Facebook search. The Facebook search revealed that the cell phone number was associated with the Facebook profile of [appellant] and he resided in Reading, Pennsylvania. Law enforcement also determined that [appellant's] last known address at 151 Pear Street, Reading, Pennsylvania, was 2.6 miles away from the Residence.

Trial court opinion, 12/5/19 at 2-4 (citations to notes of testimony omitted).

Appellant was arrested in connection with this incident and charged with three counts of robbery and one count each of criminal conspiracy, theft by unlawful taking or disposition, terroristic threats, and simple assault.[2]  On August 19, 2019, appellant filed a motion *in limine* to preclude the Commonwealth from introducing a Facebook page associated with appellant into evidence.  (*See* motion *in limine*, 8/12/19 at ¶¶ 1-6.)  The trial court denied appellant's motion *in limine*, and appellant proceeded to a jury trial that same day.  Following a two-day trial, the jury found appellant guilty of one count of criminal conspiracy.  Appellant was found not guilty of the remaining charges.  On September 10, 2019, the trial court sentenced appellant to three to six years' imprisonment.  Appellant filed a timely post-sentence motion for reconsideration of sentence that was denied by the trial court on September 26, 2019.  This timely appeal followed.[3]

Appellant raises the following issues for our review:

> 1. Whether the trial court erred when it denied appellant's motion in limine and allowed the Commonwealth to admit evidence of a Facebook page purported to be [] appellant's found using a phone number where the search tool was no longer available for unknown reasons, the phone number supposedly searched was not listed on said page and no further testimony was offered to authenticate that [] appellant maintained said page and further the Facebook page was not relevant as the Commonwealth

---

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3701(a)(1)(iv), 3701(a)(1)(v), 903(a)(1), 3921(a), 2706(a)(1), and 2701(a)(3), respectively.

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

had already identified the wireless subscriber within 24 hours of the incident through Sprint[?]

2. Whether the Commonwealth failed to present sufficient evidence to support a verdict of conspiracy to commit robbery in connection with the fingerprint evidence offered where the Commonwealth did not show a connection between the source material (a beer bottle recovered from the property) and the robbery where no testimony was offered to show that a perpetrator was seen handling the bottle and no testimony was offered by the victim that he smell[ed] alcohol on the perpetrators and the Commonwealth offered no testimony to identify [] appellant as a specific perpetrator of the robbery[?]

3. Whether the trial court abused its discretion in sentencing when it used the deadly weapon possessed matrix for conspiracy to commit robbery where there was no indication [] appellant possessed a firearm or that the firearm was within his immediate physical control considering that one of the three perpetrators was at the victim's vehicle and not in proximity to the firearm[?]

Appellant's brief at 7-8 (extraneous capitalization omitted). For the purposes of our review, we have elected to address appellant's claims in a slightly different order than presented in his appellate brief.

## I. Denial of Motion *in Limine* and Admissibility of the Facebook Page

Appellant's admissibility of evidence argument is two-fold. Appellant first contends that the trial court abused its discretion in admitting the Facebook page associated with the cell phone number utilized to call the victim

because it was not properly authenticated under Pennsylvania Rule of Evidence 901. (Appellant's brief at 20, 22.) We disagree.

"When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa.Super. 2010) (citation omitted), *appeal denied*, 20 A.3d 485 (Pa. 2011). "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion." *Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa.Super. 2015) (citations and internal quotation marks omitted), *appeal denied*, 124 A.3d 308 (Pa. 2015). "An abuse of discretion is not merely an error of judgment; rather discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." *Commonwealth v. Antidormi*, 84 A.3d 736, 745 (Pa.Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Rule 901 provides, in relevant part, that "[to] satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication requirement under Rule 901.

*Commonwealth v. McKellick*, 24 A.3d 982, 988 (Pa.Super. 2011) (citations and internal quotation marks omitted), *appeal denied*, 34 A.3d 828 (Pa. 2011); *see also* Pa.R.E. 901(b)(1).

> [A]uthentication of social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question . . . .

*Commonwealth v. Danzey*, 210 A.3d. 333, 338 (Pa.Super. 2019) (citations omitted), *appeal denied*, 219 A.3d 597 (Pa. 2019). As with all other evidence, a trial court should only admit such evidence when "its probative value outweighs its prejudicial effect." *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006), *cert. denied*, 549 U.S. 920 (2006).

Instantly, the record reflects that the trial court acted within its discretion in admitting the Facebook page into evidence. At trial, the Commonwealth laid a proper foundation under Rule 901(b)(1) by presenting the testimony of Detective Manndel, the investigating detective in this case. Detective Manndel testified that during the course of his investigation, he utilized a search feature on Facebook to determine if the cell phone number that was utilized to order Chinese food and setup the robbery of the delivery driver was associated with an account on Facebook. (Notes of testimony, 8/19-20/19 at 188-189.) Detective Manndel's testimony clearly established that the evidence in question was what it was purported to be, a Facebook

page associated with appellant. Specifically, Detective Manndel testified as follows:

> Q. Now, again, Commonwealth's Exhibit 1, that phone number, did you type that phone number into Facebook?
>
> A. Yes, I took the phone number that we had in this case, I put it into Facebook in the search bar, and I got one result back. And the result that came back was the Facebook profile of an individual by the name of [appellant].
>
> . . . .
>
> Q. Detective, I'm going to show you what's been marked as Commonwealth's Exhibit 11. Could you take a look at that and tell me if you recognize it?
>
> A. Yes, that's the top of the profile page for [appellant] which is the result that I had gotten back when I put that phone number in when I searched that phone number.
>
> . . . .
>
> Q. Okay. And were there any other names associated with that phone number?
>
> A. No.
>
> Q. And there's a name of [appellant]. Is there any location information about where the person on that page lives?
>
> A. Yes, Reading, Pennsylvania.

*Id.* at 129-130.

Moreover, our review of the record establishes that appellant's ownership of the Facebook page was corroborated through other evidence

presented at trial. The record reflects that the Facebook page bearing appellant's name and city of residence – Reading, Pennsylvania – was consistent with his last known address, 151 Pear Street, Reading, Pennsylvania, which was a mere 2.6 miles from the scene of the robbery. (*Id.* at 187-188.)

Based on the foregoing, we find that the Commonwealth produced sufficient evidence that the Facebook page in question was "that which it purports to depict." *Serge*, 896 A.2d at 1177. Accordingly, appellant's authentication argument is meritless.

Appellant also argues that the trial court abused its discretion in admitting the Facebook page into evidence because the Commonwealth's identification of Dimitry Taylor as the account holder associated with the cell phone number on the delivery receipt made the Facebook page irrelevant. (Appellant's brief at 20, 23-24.) We disagree.

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Antidormi*, 84 A.3d at 750 (citation omitted); *see also* Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Pursuant to Pennsylvania Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Contrary to appellant's contention, evidence of the Facebook page was clearly relevant to establish appellant's identity as one of the three perpetrators of the robbery, and its probative value far outweighed any potential for prejudice.

For all the foregoing reasons, we discern no abuse of discretion on the part of the trial court in allowing appellant's Facebook page to be admitted into evidence.

## II. Application of the Deadly Weapon (Possessed) Enhancement

We now turn to appellant's claim that the trial court abused its discretion in applying the deadly weapon (possessed) enhancement at sentencing, because "there was no indication [he] possessed a firearm or that the firearm was within his immediate physical control considering that one of the three perpetrators was at the victim's vehicle and not in proximity to the firearm." (Appellant's brief at 27.)

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015). This court has long recognized that a claim that the trial court misapplied the

deadly weapon enhancement goes to the discretionary aspects of sentence. *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *appeal denied*, 964 A.2d 895 (Pa. 2009), *cert. denied*, 556 U.S. 1264 (2009). Where an appellant challenges the discretionary aspects of his sentence, the right to appellate review is not absolute. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). On the contrary, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Instantly, the record reveals that appellant filed a timely notice of appeal and preserved his challenge to the application of the deadly weapon enhancement in his post-sentence motion. Appellant also included a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). (*See* appellant's brief at 15-17.) Accordingly, we must determine whether appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Griffin*, 65 A.3d

932, 935 (Pa.Super. 2013) (citation omitted), ***appeal denied***, 76 A.3d 538 (Pa. 2013). "A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa.Super. 2012) (citation omitted), ***appeal denied***, 63 A.3d 774 (Pa. 2013). Here, appellant's challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing. ***See Commonwealth v. Tavarez***, 174 A.3d 7, 10 (Pa.Super. 2017), ***appeal denied***, 189 A.3d 385 (Pa. 2018). Accordingly, we proceed to consider the merits of appellant's discretionary sentencing claim.

Read in relevant part, the deadly weapon (possessed) enhancement of the Sentencing Guidelines provides as follows:

**(a) Deadly Weapon Enhancement.**

(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa.C.S.[A.] § 9712) whether loaded or unloaded, or

> > (ii) Any dangerous weapon (as defined in 18 Pa.C.S.[A.] § 913), or
> >
> > (iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual.

204 Pa.Code § 303.10(a)(1)(i-iii).

A panel of this court examined the application of the deadly weapon (possessed) enhancement in *Phillips*, *supra*. *Phillips* involved a defendant convicted of robbery and related offenses who challenged the sentencing court's application of the deadly weapons (used) enhancement on the basis he never had actual, physical possession of his co-conspirator's weapon during a robbery. *Phillips*, 946 A.2d at 108, 111-112. On appeal, the *Phillips* court concluded that the sentencing court erred in applying the deadly weapons (used) enhancement to defendant's sentence because he had not "used" the firearm to threaten or injure another individual. *Id.* at 114-115. However, the *Phillips* court held that the sentencing court should have utilized the deadly weapon (possessed) enhancement matrix, as defendant's conduct fell within the broader ambit of Section 303.10(a)(1). *Id.* Specifically, the *Phillips* court reasoned that the application of the deadly weapon (possessed) enhancement was appropriate if the defendant: (1) was in the immediate

vicinity of his armed co-conspirator when a firearm was used to threaten a robbery victim; (2) had knowledge of the existence of the firearm; and (3) "could easily have been given or taken the firearm at any moment during the robbery." *Id.* at 114 (citation, footnote, and internal quotation marks omitted).

Similarly, in the instant matter, we find that the trial court properly applied the deadly weapon (possessed) enhancement in fashioning appellant's sentence. The evidence at trial established that the victim was accosted in the dark by appellant and two other individuals who jumped out in tandem from the bushes as he approached a residence to deliver Chinese food. (Notes of testimony, 8/19-20/19 at 79-80.) The record further reflects that all three of these individuals were wearing knit hats and facemasks. (*Id.* at 80, 91-92.) One of these individuals pressed a gun into the victim's back and threatened to kill him while the second individual waved a knife at his chest and throat and threatened his life. (*Id.* at 81, 98.) While these two individuals detained the victim and removed the money from his pockets, the third individual ransacked the victim's vehicle and stole $300, his wallet, and car keys. (*Id.* at 82-83, 93.) During this incident, appellant was struck in the head with the firearm and repeatedly threatened. (*Id.*) Although the victim was unable to identify at trial which of these three individuals was appellant, the record reflects that appellant was in the immediate vicinity when the two deadly weapons were used to threaten the victim and could have taken

possession of a weapon at any time. *See Phillips*, 946 A.2d at 114. Based on the foregoing, we discern no error on the part of the trial court in applying the deadly weapon (possessed) enhancement in this case. Accordingly, appellant's challenge to the discretionary aspects of his sentence fails.

## III. Sufficiency of the Evidence

Appellant next argues that there was insufficient evidence to sustain his conviction for criminal conspiracy because the Commonwealth failed to prove his identity as one of the co-conspirators. (Appellant's brief at 24.) In support of this contention, appellant avers that the Commonwealth failed to establish a connection between the cold bottle of beer found at the scene that contained his fingerprint and the robbery. (*Id.*) We disagree.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Thomas*, 988 A.2d 669, 670 (Pa.Super. 2009) (citations omitted), *appeal denied*, 4 A.3d 1054 (Pa. 2010).

Criminal conspiracy requires the Commonwealth to prove that appellant "(1) entered into an agreement to commit or aid in an unlawful act with

another person or persons; (2) with a shared criminal intent; and (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Mitchell***, 135 A.3d 1097, 1102 (Pa.Super. 2016), ***appeal denied***, 145 A.3d 725 (Pa. 2016); ***see also*** 18 Pa.C.S.A. § 903(a). A conspiratorial agreement can be proven by circumstantial evidence and "inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Commonwealth v. Feliciano***, 67 A.3d 19, 26 (Pa.Super. 2013) (***en banc***) (citation and internal quotation marks omitted), ***appeal denied***, 81 A.3d 75 (Pa. 2013). Additionally, we recognize that "a perpetrator's identity may be established with circumstantial evidence. This Court has recognized that evidence of identification need not be positive and certain to sustain a conviction." ***Commonwealth v. Dunkins***, 2020 Pa.Super. 38, at *7 (Pa.Super. Feb. 12, 2020) (citations, internal quotation marks, and brackets omitted).

Upon review of the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was ample circumstantial evidence presented at trial to establish appellant's identity as one of the three individuals who robbed the victim. Appellant's argument disregards the fact that he was not convicted on fingerprint evidence alone. As discussed ***supra***, the cell phone number utilized to call for Chinese food and set up the robbery was specifically linked to appellant's Facebook page.

Moreover, although the victim was unable to identify any of the three perpetrators at trial, the presence of appellant's fingerprints on the cold bottle of beer found by Officer Cilento places him at the scene of the robbery shortly before it occurred. (**See** notes of testimony, 8/19-20/19 at 85-86, 101-102, 128, 130-131.) The trial court summarized the evidence presented at trial on this issue as follows:

> [T]he Commonwealth established that the Residence was a secluded home situated on a lightly traveled road. This was not a public place where a number of people may have had innocent contact with the beer bottle. The beer bottle was located on the same side of the Residence that the perpetrators emerged from and approximately ten feet behind the location where [the victim] first observed them. Foam was located inside of the bottle indicating that the bottle had recently been moved or shaken. The inside of the beer bottle was still cold when discovered by law enforcement. Furthermore, there was no innocent explanation for why [appellant's] print was on the beer bottle discovered at the scene immediately after the occurrence of a robbery.

Trial court opinion, 12/5/19 at 9.

Based on the foregoing, we find that the Commonwealth presented sufficient evidence for the jury to conclude that appellant was one of the three individuals who conspired to rob the victim. Accordingly, appellant's claim that there was insufficient evidence to sustain his conviction for criminal conspiracy must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2020