J-A24029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY STEVEN STEHLEY | : | |
| | : | |
| Appellant | : | No. 1081 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 16, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000418-2016

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: AUGUST 9, 2021**

Troy Steven Stehley appeals from the judgment of sentence entered following his convictions for Fleeing or Attempting to Elude Police Officer, two counts of Recklessly Endangering Another Person ("REAP"), Criminal Mischief, Possession of a Controlled Substance ("Possession"), two counts of Possession with Intent to Deliver ("PWID"), and Possession of Drug Paraphernalia.[1] Stehley challenges the discretionary aspects of his sentence. We affirm.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict-winner, the facts and procedural history giving rise to this appeal are as follows. On March 29, 2015 around 1 a.m., Corporal Derek Swope saw a van "traveling at a high rate of speed. It was swerving back and forth and then made a quick left-hand turn . . . in front of me." N.T. Trial, 12/10/18, at

---

[1] **See** 75 Pa.C.S.A. § 3733(a); 18 Pa.C.S.A. §§ 2705, 3304(a)(2); 35 P.S. §§ 780-113(a)(16), (a)(30), and (a)(32), respectively.

72. Corporal Swope attempted to follow it with his lights and sirens on but because "[the van] was traveling at such a high rate of speed, it was disregarding stop signs that I quickly lost it." *Id.* at 73. Corporal Swope "radioed all of the other officers who were working that night" with a description of the vehicle. *Id.*

Officer Matthew Angermeier saw a van fitting the description given over police radio and began to follow it. *See id.* at 29. He saw it take "a wide right turn coming towards a median on the left side of the road, almost striking that median," and kick[ing up] those rocks . . . that were very close to the median." *Id.* at 30. Eventually Officer Angermeier activated his lights and sirens and the vehicle "began to pull off to the right side of the road." *Id.* at 31, 32. Although it paused for a moment, it then sped away again. *Id.* at 32. Officer Angermeier continued to follow the vehicle as it traveled through an apartment complex. "[T]he vehicle [then] stopped, the driver's side door opened, a person leaned out and [Officer Angermeier] gave a description of [the driver's clothing]." *Id.* at 32-33. The driver got back into the vehicle and "continued at a high rate of speed away from [Officer Angermeier.]" *Id.* at 33. Officer Angermeier estimated that the driver was traveling "anywhere upwards of over 75 miles an hour" in a 25 miles per hour zone. *Id.* He also observed the driver fail to "stop for multiple stop signs" and fail to use his turn signal. *Id.* In an attempt to keep up with the driver, Officer Angermeier reached a speed of over 70 miles an hour in his patrol vehicle. *See id.*

- 2 -

The driver of the van continued traveling and after almost colliding with another vehicle, he ultimately crashed and was ejected from the vehicle. *See id.* at 111, 112, 121. Police later identified the driver of the vehicle as Stehley. *See id.* at 112. Officers arriving at the scene shortly after the crash observed Stehley lying on the ground unconscious and at trial described the van as having its roof sheared off, the engine on fire, and several wheels ripped off. *See id.* at 112, 118, 119-20, 121-22. A firearm was found near where Stehley lay. *Id.* at 82.

At a nearby hospital, Stehley remained unconscious and medical personnel cut his pants "to tend to his injuries." *Id.* at 124. A police officer saw "a multitude of controlled substances" and "a large amount of cash" fall from Stehley's pocket. *Id.* at 124, 132. Testing revealed the controlled substances to be 14 bags of heroin, eight foil packets of synthetic cathinone (so-called "bath salts"), and approximately 13 grams of cocaine. *See id.* at 161-63. A scale was also retrieved from his clothing. *See id.* at 163.

A woman residing near the crash site, Kathy Coleman, was awakened by sirens in the early morning hours of the day in question. *See id.* at 138, 139. When she got up to check what was going on, she saw that her kitchen back door was hanging off, "the outside door was off[,]" "the kitchen table and chairs were ajar[,]" "there was glass all over the kitchen floor[,]" and "there was a wheel in the kitchen." *Id.* at 139.

The Commonwealth charged Stehley with PWID, multiple traffic offenses, Fleeing or Attempting to Elude a Police Officer, and other offenses.

Stehley proceeded with a jury trial and testified in his defense.[2] **See** N.T. Trial, 12/11/18, at 105-35. He testified in part that he was hospitalized for approximately one month after the crash and only remembered "bits and pieces" about what happened that day. **Id.** at 114. He testified that he did not own the van, he did not recognize the firearm found at the scene, and that the officers were "mistaken" about him being the driver of the van. **Id.** at 115, 116, 127. He also testified that a man named "Dan D'Andrea" was the person driving the van. **Id.** at 129. However, he admitted purchasing the drugs that were found on him. **See id.** at 133.

The jury found Stehley guilty of the above-referenced offenses. The trial court held a sentencing hearing where the trial court was given the presentence investigation report ("PSI") and also heard from Stehley. **See** N.T. Sentencing, 5/16/19, 14-19, 27 (PSI marked as Court's Exhibit A). Much of his testimony to the court included accusations that the prosecutor was "dishonest on record[.]" **Id.** at 14, 15, 17-18.

Prior to sentencing Stehley, the trial court noted that Stehley's conduct "put people at risk for their lives[.]" **Id.** at 19. It also noted that it "believed the jury believed and I follow the jury's verdict that Mr. Stehley was driving

---

[2] This appeal is limited to the above convictions referenced. A severed jury trial was held for firearms charges on June 6, 2018 and the jury found Stehley guilty on the charges. **See Commonwealth v. Stehley**, 248 A.3d 502 (Pa.Super. filed January 22, 2021) (unpublished memorandum). The court also found Stehley guilty of one DUI offense. **See** Order, 5/16/19, at 6. These additional charges all arise from the same facts referenced above.

despite his remarks to the contrary." *Id.* at 19-20. It then gave its considerations for the sentence prior to imposing it:

> Mr. Stehley, based on --- you may be fooling me. Who knows? But based on your acceptance of some responsibility here, I've actually downgraded. . . . I've reduced my --- gone a little lower than the range I anticipated going into based on what you've said to me today.
>
> Mr. Stehley, let me say this to you though, sir. You didn't help yourself with me with your accusations against [the Commonwealth]. We're not buddies. [The prosecutor] and I have never seen each other outside the courthouse. We're not friends. I don't go to lunch with him. . . . .
>
> The purpose of the sentence was I considered [Stehley's] extensive prior record recognizing it's incorporated in the prior record score and into the sentencing guidelines. The [c]ourt considered the sentencing guidelines. All of [Stehley's] sentences will be within the standard guidelines. The [c]ourt recognizes [Stehley's] achievements have been presented by [defense counsel] while he's been incarcerated, but the [c]ourt also sees prior to that a failure to be amendable to treatment.

*Id.* at 20-21.

The trial court imposed an aggregate sentence of 76 to 152 months' incarceration.[3] Stehley filed a post sentence motion, which the trial court denied. This timely appeal followed.[4]

_____

[3] The trial court sentenced Stehley to a term of 24 to 48 months of incarceration for fleeing; 12 to 24 months for each REAP count, concurrent with each other and consecutive to the incarceration for fleeing; 40 to 80 months for possession of cocaine, concurrent with 24 to 28 months for possession of bath salts, with possession counts imposed consecutive to the other incarceration; and 2 days to 6 months for DUI imposed concurrent with the other incarceration. The remaining charges were either merged for sentencing, or no further penalty was imposed. *See* N.T. Sentencing, 5/16/19, at 22-27.

[4] The trial court ordered that Stehley file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Stehley did not comply and, in turn, the trial court did not file a Pa.R.A.P. 1925(a) opinion, but asked that this Court dismiss the appeal. We remanded to the trial court for Stehley to file a counseled Rule 1925(b) statement and for the trial court to submit an updated Rule 1925(a) opinion. *See Commonwealth v. Stehley*, 248 A.3d 456 (Pa.Super. filed January 4, 2021) (unpublished memorandum). Counsel filed a statement of errors complained of on appeal on January 20, 2021. However, the trial court did not file its 1925(a) opinion. Having not received the opinion, we assumed that the statement of errors had not been filed and drafted an order directing the court to appoint counsel. *See* Order, 4/21/21. Stehley's counsel responded to this order with a letter attaching a copy of his filed statement of errors. The trial court filed an order on April 23, 2021, in which it addressed Stehley's claim that the trial court abused its discretion when it sentenced Stehley. *See* 1925(b) Order, 4/23/21.

On June 7, 2021, the trial court issued an additional order explaining some issues it encountered while appointing new counsel, and directing the court administration to appoint Stehley a new attorney to represent him. However, as discussed above, because Stehley's counsel did file a concise statement of errors, and the trial court filed its opinion addressing the claim raised in that statement, Rule 1925 has been complied with and we are able to address the merits of the issue raised in this appeal.

Stehley raises one issue before this Court: "Did the trial court abuse its discretion in imposing a sentence which was overly harsh given the facts of the case?" Stehley's Br. at 5.

As stated, Stehley's claim challenges the discretionary aspects of his sentence. For such a claim there is no automatic right to appeal. **See Commonwealth v. Disalvo**, 70 A.3d 900, 902 (Pa.Super. 2013). Instead, this Court must inquire first whether: (1) the appeal is timely; (2) the issue is preserved; (3) appellant's brief includes a Pa.R.A.P. 2119(f) statement; and (4) the appellant raises a substantial question. **See id.** If all four of these requirements are satisfied then we may proceed to review the merits of appellant's claim.

A substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa.Super. 2008) (citation omitted). Whether a particular issue raises a substantial question is a case by case determination. **See Commonwealth v. Cunningham**, 805 A.2d 566, 574 (Pa.Super. 2002). Additionally, we do not look beyond the statement of questions presented and appellant's Rule 2119(f) statement to determine if a substantial question exists. **See Commonwealth v. Radecki**, 180 A.3d 441, 468 (Pa.Super. 2018).

Here, Stehley has satisfied all four prerequisites to our reaching the merits of his issue. His appeal was timely, he preserved his sentencing issue, his brief includes a Rule 2119(f) statement, and he has stated a substantial question. He claims in his Rule 2119(f) statement that the trial court "failed to consider the pain and suffering he experienced from the crash of the van and his long recovery from his injuries" and that his sentence was "harsh." Stehley's Br. at 7; *see also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014) ("[T]his Court has held that an excessive sentence claim— in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.").

We review challenges to discretionary aspects of a sentence for abuse of discretion. This requires the appellant to establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Disalvo*, 70 A.3d at 903.

Stehley maintains that the trial court ought to have given him a lesser sentence because he was "the only person who was really harmed or injured[.]" Stehley's Br. at 8. He adds that in his view, the sentence for REAP was too steep because there was "no actual impact on the life of a victim," claiming that Kathy Coleman did not "seem to be too upset or concerned about" the wheel of his car crashing through her kitchen door. *Id.* at 9. He also challenges his sentence as longer than that needed for his rehabilitation,

and contends his PWID sentence is improper because despite his lengthy criminal history, he has never been convicted of drug delivery.

Stehley's sentence is not an abuse of discretion. His characterization of the facts is inapt. While he may have been the only person in the case who sustained injuries, as the trial court pointed out, Stehley most certainly "put people at risk for their lives[,]" including the officers involved in pursuing him as well as Coleman. N.T. Sentencing, 5/16/19, at 19.

His additional claim that the absence of a prior conviction for drug delivery somehow renders his sentence for PWID inappropriate holds no water. This is a *non-sequitur* – the conclusion does not flow from the premise. Regardless of his prior criminal history, he has now been convicted of PWID and his prior record does not in and of itself render his sentence for the instant PWID conviction improper.

Moreover, prior to imposing sentence, the trial court considered the information included in the PSI as well as Stehley's achievements while incarcerated and his acceptance of responsibility. ***See Commonwealth v. Moury***, 992 A.2d 162, 175 (Pa.Super. 2010) (stating where court has benefit of PSI, this Court presumes that "the court was aware of and weighed information concerning [a]ppellant's character when making its sentencing decision"). Thus, in imposing sentence, the trial court adhered to the requirements of the Sentencing Code and took into account "the protection of the public, the gravity of offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant."

42 Pa.C.S.A. § 9721(b). Finally, where, as here, "a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." **Moury**, 992 A.2d at 171 (citation omitted). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  08/09/2021