J-S28045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RICHARD WAYNE SCHOCK | : | |
| | : | |
| Appellant | : | No. 1675 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 23, 2021
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006658-2017

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: SEPTEMBER 29, 2022**

Appellant, Richard Wayne Schock, appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his resentencing for one count each of drug delivery resulting in death and delivery of a controlled substance.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows.

> In the early hours of February 18, 2017, [Decedent] was found dead in his bedroom in the basement of his parents' home.  Toxicology results revealed elevated levels of fentanyl in [Decedent's] blood, and [Decedent's] cause of death was determined to be mixed substance toxicity.
>
> A short distance away from [Decedent's] parents' home lived Appellant and his girlfriend, Tammy, at a location referred to as "the farm."  Jennings Perrine ("Junior"), a friend of [Decedent's], ran into Tammy at a store earlier the day before [Decedent's] death, and Tammy told Junior that

_____

[1] 18 Pa.C.S.A. § 2506 and 35 P.S. § 780-113(a)(30), respectively.

Appellant was in Baltimore getting heroin. Later that night, Junior and [Decedent] had a text message conversation about buying heroin, as they both were interested in obtaining some. Junior informed [Decedent] he could get the drugs from "the farm." Around the time of [Decedent's] conversation with Junior, [Decedent] sent Appellant a text saying, "Did Junior text you? It's cool if we stop over?" To Junior's knowledge, [Decedent] contacted Appellant directly because Appellant did not care to deal with Junior. [Decedent's] phone also made two outgoing calls to Appellant at 10:05 and 10:17 p.m.

Junior subsequently arrived at [Decedent's] parents' house around midnight to pick up [Decedent], and they went to the farm, where they met Appellant outside of the farm. At trial, Junior testified that he saw Appellant get out of his vehicle and give [Decedent] "what they thought was heroin" in exchange for $100. Appellant gave [Decedent] six "footballs," which were packages of heroin that Appellant was known to fold up into paper that looked like footballs. [Decedent] snorted one football in the car, gave another football to Junior, and Junior dropped off [Decedent] at his parents' house. The following morning, Appellant sent Junior a text which stated, "[Decedent] died, call now."

Money found in [Decedent's] wallet after his death was consistent with testimony that he was paid that day at work, purchased dinner, and then bought $100 worth of heroin. Two pieces of paper, folded into a football-like shape, were found on or inside [Decedent's] dresser. A tan powdered substance inside the packages was tested and confirmed to be fentanyl.

*　　*　　*

After an investigation into the circumstances of [Decedent's] death, Appellant was arrested and charged as follows: Count 1—Manufacture, Deliver or Possession with Intent to Manufacture or Deliver; Count 2—Drug Delivery Resulting in Death; Count 3—Involuntary Manslaughter; and Count 4—Conspiracy to [Commit] Drug Delivery Resulting in Death. On September 20, 2017, a Waiver of Arraignment was entered….

*    *    *

A jury trial began on January 14, 2019; on January 17, 2019, the jury was unable to reach a verdict, and the court declared a mistrial. On September 19, 2019, the court granted the Commonwealth's motion to schedule a date certain jury trial on November 4, 2019; this was later continued….

*    *    *

On July 13, 2020, the case was called to trial…. On July 15, 2020, the jury reached a verdict of guilty as to Count 1—Manufacture, Deliver or Possession with Intent to Manufacture or Deliver; Count 2—Drug Delivery Resulting in Death, and Count 4—Conspiracy to [Commit] Drug Delivery Resulting in Death. Appellant was found not guilty of Count 3—Involuntary Manslaughter. On August 26, 2020, Appellant was sentenced to 8½ to 17 years on the drug delivery resulting in death conviction and a consecutive sentence of 8 to 16 years on the criminal conspiracy conviction for an aggregate term of 16½ to 33 years' imprisonment. [The conviction at Count 1 merged for sentencing purposes with Count 2.]

*    *    *

On September 22, 2021, the Superior Court of Pennsylvania issued a Decision on Appellant's Appeal and affirmed Appellant's Convictions at count 1 (delivery of a controlled substance) and count 2 (drug delivery resulting in death), but vacated Appellant's conviction at count 4 (criminal conspiracy to [commit] drug delivery resulting in death) and remanded the case for resentencing as to not "upset the sentencing scheme envisioned by the [sentencing] court." [**See Commonwealth v. Schock**, No. 1396 MDA 2020, unpublished memorandum at 23 (Pa.Super. filed Sep. 22, 2021).] The Superior Court of Pennsylvania provided, "[because] the trial court sentenced [Appellant] to a consecutive 8 to 16 years' imprisonment for conspiracy, our vacation of that conviction upsets the trial court's sentencing scheme. Thus, [Appellant] must be resentenced on the drug delivery resulting in death and delivery of a controlled substance convictions that we have affirmed."

- 3 -

[*Id.*]

> On November 23, 2021, Appellant [appeared] for resentencing on the drug delivery resulting in death and delivery of a controlled substance convictions. At the November 23, 2021 sentencing hearing [the trial court] merged the drug delivery resulting in death and delivery of a controlled substance convictions and sentenced Appellant to 16½ to 33 years to be served in the state correctional facility. [The trial court] gave Appellant 1,497 days of time served credit. Additionally, [the trial court] ordered Appellant to pay restitution….
>
> Appellant filed a Post-Sentence Motion on November 30, 2021, and [the trial court] denied that Motion on December [3], 2021. On December 20, 2021, Appellant filed a Notice of Appeal. Appellant was directed to file a Concise Statement of Matters Complained of on Appeal by [the trial court] on December 22, 2021. Appellant filed a Statement of Matters Complained on January 10, 2022.

(Trial Court Opinion, filed 2/16/22, at 1-6) (internal footnotes omitted).

Appellant now raises one issue on appeal:

> Whether the … trial court erred and abused its discretion in re-sentencing [A]ppellant to 16½ to 33 years on the charge of drug delivery resulting in death when the Superior Court did not disturb the conviction or the sentence of 8½ to 17 years in the prior appeal for drug delivery resulting in death?

(Appellant's Brief at 4).

Appellant argues that the court imposed a longer sentence for the drug delivery resulting in death conviction upon remand. Although not expressly stated in the brief, Appellant's claim implies judicial vindictiveness at the resentencing hearing. Appellant maintains that the court did not provide any reasons for the increased sentence during the resentencing hearing. Further, Appellant contends that the court violated his constitutional rights by imposing

- 4 -

a longer sentence for the drug delivery resulting in death conviction where this Court did not disturb that conviction in the prior appeal. Appellant also alleges that his new sentence potentially violates the double jeopardy provisions of the United States and Pennsylvania Constitutions. Appellant concludes this Court must vacate the sentence and remand for resentencing. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Barnes*, 167 A.3d 110, 122 (Pa.Super. 2017) (*en banc*) (stating that claim of judicial vindictiveness in resentencing constitutes challenge to discretionary aspects of sentencing). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S. Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Phillips, supra* at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*) (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). A substantial question is raised when an appellant alleges that his sentence on remand was a product of vindictiveness. *See Barnes, supra* at 123.

Instantly, Appellant timely filed his notice of appeal, he preserved his

issue by including it in his post-sentence motion, and his appellate brief includes a Rule 2119(f) statement. Appellant's claim also raises a substantial question as to the appropriateness of the sentence imposed. **See id.** Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

**Commonwealth v. McNabb**, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting **Commonwealth v. Hess**, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." **Commonwealth v. Griffin**, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." **Id.** When considering the propriety of a sentence that falls above the guideline ranges, but below the statutory maximum, this Court has noted:

> Through the Sentencing Code, the General Assembly has enacted a process by which defendants are to be sentenced. As a threshold matter, a sentencing court may select one or

more options with regard to determining the appropriate sentence to be imposed upon a defendant. … In making this selection, the Sentencing Code offers general standards with respect to the imposition of sentence which require the sentencing court to impose a sentence that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." Thus, sentencing is individualized; yet, the statute is clear that the court must also "consider" the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. If the court imposes a sentence outside of the sentencing guidelines, it must provide a written statement setting forth the reasons for the deviation and the failure to do so is grounds for resentencing.

*Commonwealth v. Walls*, 926 A.2d 957, 963 (Pa.Super. 2007) (internal citations and footnote omitted).

Further, when evaluating claims of judicial vindictiveness:

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

- 8 -

*Barnes, supra* at 123 (emphasis omitted).  The aforementioned "rationale for providing reasons on the record applies also when the original sentence is vacated and a second sentence is imposed without an additional trial." *Id.*

Here, the sentencing court provided the following on-the-record statement of reasons to support the sentence imposed:

> [T]he sentencing guidelines in this case reflect that [Appellant's] standard range is 96 months to 114.[2]  I can deviate upwards if I put [reasons] on the record for my deviation or, quite frankly, the guidelines are simply that.  They are guidelines which I take into consideration when I impose a sentence.  But if I'm going to not follow the guidelines, I'm required to put on record the reasons for that.  There are a series of factors that the sentencing code takes into consideration and I'll go through these factors as reflected in the statute.
>
> [Appellant's] probationary status at the time of the offense, [the] Commonwealth has advised that [Appellant] was not on probation, but I do note, and I'm aware that [Appellant] was out on bail for the charge of the DUI.  That, of course, bail conditions are you commit no violations of the law while you're in jail.  There's not much greater violations of the law [than] in this case.
>
> [Appellant] not cooperating with the police is the second factor they list.  In this case, the officer in the [pre-sentence investigation ("PSI") report] reflected that [Appellant] had two opportunities to meet with the police and to give his side of the story.  He chose to do so and denied on both occasions any involvement whatsoever in this case.  The jury did not bear out that.

---

[2] Appellant's prior record score was five.  (*See* N.T. Sentencing Hearing, 8/26/20, at 27).  The offense gravity score for drug delivery resulting in death is thirteen.  *See* 204 Pa.Code § 303.15.  Thus, the court correctly noted that the standard range of the Sentencing Guidelines was 96 to 114 months.  *See* 204 Pa.Code § 303.16(a).

Employment record. I note that he has been employed but if I quote him his work history, he worked on and off. That was his definition. Those were his quotes, so it's not a great work employment record. A history of violence, his criminal conviction history while he's I think a five, does not reflect crimes of violence. It does reflect his continued pattern of drugs throughout his entire criminal history as well as behavior which is occasioned by drugs which includes DUI. So I take into consideration the very fact that his prior record score is a five. I know we use that in calculating guidelines but I use that in determining whether or not [Appellant] has advanced beyond his normal behaviors through any time since he started his original criminal history. And, again, [Appellant's] statements during the PSI were that he had multiple treatments [at] White Deer Run, Lancaster, Lebanon, York, Cove Forge, his self-report to probation is, I've been in treatment 15 different times and I've had no success in dealing with that.

He quit school in 10th grade. He never sought to get a GED. He said, I don't need a GED for what I do. Obviously, he doesn't need it to be a dope dealer. …

I note as well, and take into consideration, between the time [Appellant] was originally arrested and while he was in the York County Prison, he didn't do very well there. On July 15th of 2020, that was just a couple of weeks before his sentencing, he had three different offenses for possessing drugs for which he received some kind of [punitive] sanction.

Going backwards in time, May 25th he engaged in an act that endangered other people. April 24th he engaged in an act that endangers other people. March 6th engaged in an act that endangers other people. January 3rd he refused an Order, and that was in 2020. Back in 2019, conduct that disrupts[,] … contraband … and lying. On July 28th, engaged in fighting. August 12, 2018, he engaged in fighting. April 16, 2018, interference, disrespect, and abusive language. And I note, as well as counsel has, there's an intimidation charge that was part of this case when he intimidated a witness that was scheduled to appear and testify just moments before he testified, moments in terms of hours.

> I believe that the sentence that I originally collectively imposed is still an appropriate disposition in this case. Accordingly, the sentence of the [c]ourt in Count 1, possession with intent to deliver fentanyl, I agree and that continues to merge with Count 2. We will not impose a sentence on that. Drug delivery resulting in death, the sentence of the [c]ourt is 16 and a half to 33 years to be served in the state correctional facility.

(N.T. Resentencing Hearing, 11/23/21, at 6-9).

Contrary to Appellant's assertions, the court provided an on-the-record statement of its reasons for imposing a sentence above the guideline ranges. The court simply chose to resentence Appellant to the same aggregate sentence as originally imposed to preserve the integrity of the original sentencing scheme. *See Barnes, supra* at 125 (explaining trial court's resentencing did not rise to vindictiveness because court sought to preserve integrity of original sentencing scheme by imposing same aggregate sentence). To the extent Appellant claims that his new sentence runs afoul of double jeopardy principles, a trial court does not violate double jeopardy by increasing a sentence on remand where the aggregate term is not increased. *See id.*

Further, the court properly considered the particular circumstances of the case and Appellant's individual character. *See Griffin, supra*. Specifically, the court found that Appellant's conduct warranted a lengthy sentence due to Appellant's lack of cooperation with police, spotty employment record, educational background, conduct in prison, and intimidation of a witness. Under these circumstances, we see no abuse of

discretion. ***See McNabb, supra***. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/29/2022