J-S33026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                 :             PENNSYLVANIA

                    Appellee      :

                          :

              v.             :

                          :

ANDREW ENGDAHL           :

                          :

                  Appellant     :        No. 1058 EDA 2022

Appeal from the Judgment of Sentence Entered March 11, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0003018-2019

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:              **FILED JANUARY 31, 2023**

Appellant, Andrew Engdahl, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his open guilty pleas to sexual abuse of children and related offenses.[1]  We affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

> On October 4, 2019, [Appellant] pled guilty to one count of sexual abuse of children—manufacturing of child pornography, six counts of sexual abuse of children—possession of child pornography, one count of unlawful contact with a minor—relating to manufacturing of child pornography, and one count of obscene and other sexual materials and performances—dissemination to minors.  The charges arose from a complaint filed with the Federal Bureau of Investigation (the "FBI") in May 2017.  The complaint detailed that a mother had become concerned about the nature of Facebook conversations between an

_____

[1] 18 Pa.C.S.A. § 6312.

unknown individual and her seven-year-old daughter. This unknown individual was ultimately identified as Appellant.

FBI agents later interviewed Appellant at his home in Quakertown, Bucks County, Pennsylvania, where he consented to a search of his cell phone. This search revealed explicit photographs of a minor female, who Appellant identified as being between 14 and 16 years old. A subsequent search of Appellant's phone, pursuant to a warrant, revealed additional images of child pornography. The FBI referred the matter to the Pennsylvania Office of the Attorney General for further investigation. In 2019, the Attorney General's Office charged Appellant with 14 criminal counts related to the images found on his phone by both the FBI and the Attorney General's Office.

(Trial Court Opinion, filed 6/17/22, at 1-2) (internal footnotes and some capitalization omitted).

Following the entry of Appellant's guilty pleas, the court deferred sentencing and ordered a presentence investigation ("PSI") report. The court also ordered that Appellant submit to an evaluation by the Sexual Offenders Assessment Board ("SOAB"). On January 3, 2020, the Commonwealth filed a *praecipe* to schedule a hearing to determine Appellant's sexually violent predator ("SVP") status. Ultimately, the court conducted a sentencing hearing on February 10, 2020. At that time, the court denied the Commonwealth's request for an SVP hearing.[2] The court also sentenced Appellant to an

---

[2] "At the time of the Sentencing Hearing, the Bucks County Court of Common Pleas had issued a moratorium on all SVP hearings as a result of the Pennsylvania Superior Court's holding in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa.Super. 2017), which found SVP hearings and SVP designations to be unconstitutional." (Trial Court Opinion at 7).

aggregate term of four (4) to twelve (12) years' imprisonment, followed by four (4) years of probation.

Appellant timely filed a post-sentence motion on February 20, 2020. In it, Appellant claimed that the court imposed a manifestly excessive sentence "given the nature and circumstances of the offense and the history, characteristics, and rehabilitative needs of [Appellant]." (Post-Sentence Motion, filed 2/20/20, at ¶10).[3] On August 6, 2020, the court conducted a hearing on the post-sentence motion. At the conclusion of the hearing, the court granted relief in part and reduced the minimum term of incarceration for the sexual abuse of children and unlawful contact convictions. Thus, the court imposed a new aggregate sentence of forty-four (44) months to twelve (12) years' imprisonment, followed by four (4) years of probation.

On October 25, 2021, the Commonwealth filed a motion requesting the scheduling of an SVP hearing. The court conducted the SVP hearing on January 19, 2022. At the hearing, the court received testimony from Kristen Dudley, Psy.D., the SOAB member who conducted Appellant's 2019 assessment. At the conclusion of the hearing, the court deferred making a decision and ordered the parties to submit briefs on the matter. Following the

---

[3] On March 10, 2020, the Commonwealth filed a notice of appeal to our Supreme Court challenging the trial court's refusal to conduct an SVP hearing. "However, on July 9, 2020, the Commonwealth filed a *Praecipe* for Discontinuance … as a result of the Supreme Court's holding in *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020), which overruled the 2017 Superior Court Opinion in *Butler*." (Trial Court Opinion at 7 n.19).

submission of briefs, the court entered an order classifying Appellant as an SVP on March 11, 2022.

Appellant timely filed a notice of appeal on April 8, 2022.[4] On April 12, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Following an extension, Appellant filed his Rule 1925(b) statement on May 18, 2022.

Appellant now raises the following issues on appeal:

> Whether an aggregate sentence of forty-four months to one hundred forty-four months was manifestly excessive and unreasonable pursuant to 42 Pa.C.S.A. § 9781?
>
> Whether an aggregate sentence of forty-four months to one hundred forty-four months was manifestly excessive, unreasonable and not in accordance with the sentencing norms set forth in 42 Pa.C.S.A. § 9721 or under [the] Pennsylvania Sentencing Code?
>
> Whether the sentencing court erred in imposing an aggregate sentence of forty-four to one hundred forty-four months given the nature and circumstances of the offense and the history, characteristics, and rehabilitative needs of [Appellant]?
>
> Whether the sentencing court erred in designating Appellant as a "sexually violent predator" where the Commonwealth presented insufficient evidence to establish by clear and convincing evidence that Appellant met the requirements to be classified as a sexually violent predator established by

---

[4] Regarding the timeliness of the notice of appeal, "where a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered." **Commonwealth v. Schrader**, 141 A.3d 558, 561 (Pa.Super. 2016). Here, Appellant's judgment of sentence did not become final until the trial court entered the March 11, 2022 SVP order. Consequently, Appellant timely filed a notice of appeal within thirty (30) days of that order.

the Pennsylvania Sexual Offender Registration and Notification Act.

(Appellant's Brief at 4-5).

In his first three issues,[5] Appellant asserts that he informed the sentencing court that he had been sexually abused by a family member, and it was difficult for him to work through this trauma. Appellant also emphasizes that he expressed remorse for his criminal conduct, took responsibility for his actions, and cooperated with law enforcement throughout the investigation. Despite these circumstances, Appellant contends that the court imposed an unduly harsh aggregate sentence without adequately considering his personal history, characteristics, and rehabilitative needs.

Appellant acknowledges that the court provided an on-the-record statement of reasons in support of the sentence imposed, wherein the court noted Appellant's need for treatment "to ensure the public would be protected." (*Id.* at 16). Appellant insists, however, that "the record provides no evidence or guarantee such treatment would be provided in a state correctional institute." (*Id.*) Absent more, Appellant argues that the court failed "to address Appellant's rehabilitative needs or any rehabilitation Appellant may achieve while in prison." (*Id.* at 17). Appellant concludes that

_____

[5] Although Appellant presented three distinct issues in his statement of questions presented, he combined the analysis for these issues in the "argument" section of his brief. (*See* Appellant's Brief at 10-17). Consequently, we elect to address these issues together.

the court abused its discretion in fashioning his sentence, and this Court must vacate and remand for resentencing. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of his sentence. *See Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (stating that challenge to imposition of consecutive sentences as unduly excessive, together with claim that court failed to consider rehabilitative needs, constitutes challenge to discretionary aspects of sentencing). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S. Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant

must invoke this Court's jurisdiction by including in his brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Phillips, supra* at 112 (emphasis in original) (internal quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Caldwell, supra* at 768 (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). An appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question." *Caldwell, supra* at 770.

Here, Appellant timely filed his notice of appeal, he preserved his issue by including it in his post-sentence motion, and his appellate brief includes a

Rule 2119(f) statement. Appellant's claim also raises a substantial question as to the appropriateness of the sentence imposed. *See id.* Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will.

*Commonwealth v. McNabb*, 819 A.2d 54, 55 (Pa.Super. 2003) (quoting *Commonwealth v. Hess*, 745 A.2d 29, 30-31 (Pa.Super. 2000)).

"When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S. Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* "Where [PSI] reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa.Super. 2020) (quoting *Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988)).

Instantly, the trial court initially sentenced Appellant, with the benefit of a PSI report, on February 10, 2020. Prior to imposing the sentence, the court provided an on-the-record statement of reasons to support the sentence. Contrary to Appellant's assertions, the court considered Appellant's rehabilitative needs and personal characteristics:

> All right. So it's the [c]ourt's job in sentencing to consider all the factors that are relevant for this purpose.
>
> So I have done that. As I mentioned, I've studied the PSI in detail. I've also heard everything that was said today by both sides, including [Appellant's] statement himself.
>
> So, obviously, a primary concern of the [c]ourt is the … degree of remorse of [Appellant]. And, frankly, I'm not certain about your degree of remorse. You said the right things in court today. You didn't really say the right things not too long ago to the probation officer. You made excuses and you minimized. So what you really feel in your heart, [Appellant], only you know.
>
> \* \* \*
>
> So I've also looked at your criminal history and, certainly, I understand there's been no prior arrests and no prior convictions with regard to this.
>
> Your age, which you're 30 years old right now….
>
> \* \* \*
>
> Your physical health and your emotional health, I certainly heard a lot about today, and I heard—or I read in the PSI about your chaotic childhood, and you had substantial trauma in your childhood. That's got to be addressed in treatment. The trauma has got to be addressed.
>
> So I've also reviewed the sentencing guidelines and determined that among the mitigated, standard, and aggravated guidelines, that the standard guidelines are

> most appropriate here in their applicability.
>
> And I do want to reiterate what's been said. This is not a victimless crime. A 14-year-old girl has experienced something that no 14-year-old girl should experience. I am certain that it has made her distrustful of men and maybe people in general. I'm certain that it's going to affect her ability to enter into healthy, normal relationships throughout much of her life. And I certainly recognize the pain that the father expressed in his victim impact statement.
>
> So there are also other victims, as the attorney general articulated, with regard to the children who are abused and their pictures are taken and they have a marketplace, so to speak, for folks to review their photographs. So they are victims as well.

(N.T. Sentencing Hearing, 2/10/20, at 39-41). Thus, the court considered the relevant sentencing factors and felt the need to balance any mitigating circumstances against the necessity of punishing Appellant for the impact of his crimes on the victims.

Even though the court provided thoughtful consideration of the relevant sentencing factors at the original sentencing hearing, the court opted to revisit these circumstances at the hearing on Appellant's post-sentence motion. Again, the court provided a well-reasoned, on-the-record statement demonstrating its awareness of Appellant's rehabilitative needs:

> I certainly gave your sentence a great deal of thought prior to February 10th, and I believe I did my best to balance the rehabilitative needs that you have and assessing your childhood and all the trauma and chaos that you have gone through, but also looking at the safety of the community. I continue to do that today.
>
> I have re-read the transcript from the February 10th hearing. I have heard all the testimony today, but what I want to do

is give you some further incentive to get the treatment you need so you can become a productive member of society once you're on the street. And that means getting treatment not only in prison but once you're on the street. And, certainly, it should be … an absolute condition of your parole and a condition of your probation, which is consecutive to your parole.

(N.T. Hearing, 8/6/20, at 76-77). Thereafter, the court granted Appellant's post-sentence motion in part by reducing his minimum term of incarceration. (*See id.* at 77).

On this record, the court did not commit an abuse of discretion. *See McNabb, supra*. The court's reliance on the PSI report, combined with its on-the-record statements in support of the sentences, demonstrate that it was aware of the relevant sentencing considerations. *See Watson, supra*. We conclude that the court appropriately weighed those considerations. Therefore, Appellant is not entitled to relief on his challenge to the discretionary aspects of sentencing.

In his final issue, Appellant contends that he never had physical contact with the victim, N.N. Rather, Appellant merely "requested N.N. send him pictures of her vagina and he sent her pictures of his penis." (Appellant's Brief at 23). Appellant also emphasizes that he did not have physical contact with any of the other children depicted in the images of child pornography that law enforcement recovered from his phone. Appellant argues that: 1) he never committed a crime before the instant offenses; 2) he did not re-offend during the two-year period while he remained at liberty; and 3) his risk of re-offense

is low, because N.N. was an acquaintance rather than a stranger. Based upon his analysis of the relevant statutory factors and the facts of this case, Appellant concludes that the Commonwealth did not present clear and convincing evidence to support his classification as an SVP. We disagree.

Challenges to the sufficiency of the evidence supporting a trial court's SVP designation are governed by the following principles:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a[n SVP]. As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa.Super. 2015), *appeal denied*, 633 Pa. 763, 125 A.3d 1199 (2015) (quoting *Commonwealth v. Baker*, 24 A.3d 1006, 1033 (Pa.Super. 2011)). "SVP" is defined as:

> A person who has been convicted of a sexually violent offense … and who is determined to be a sexually violent predator … due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition … that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory. Predatory conduct is defined as an act directed at a stranger or at a person with whom a relationship has

been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization. Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an "independent element."

***Commonwealth v. Leatherby***, 116 A.3d 73, 84-85 (Pa.Super. 2015)

(quoting ***Commonwealth v. Stephens***, 74 A.3d 1034, 1038-39 (Pa.Super.

2013)).

SOAB evaluators must consider the following factors when performing

SVP assessments:

(1)      Facts of the current offense, including:

      (i)     Whether the offense involved multiple victims.

      (ii)    Whether the individual exceeded the means necessary to achieve the offense.

      (iii)   The nature of the sexual contact with the victim.

      (iv)   Relationship of the individual to the victim.

      (v)    Age of the victim.

      (vi)   Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

      (vii)  The mental capacity of the victim.

(2)      Prior offense history, including:

      (i)     The individual's prior criminal record.

(ii)     Whether the individual completed any prior sentences.

(iii)    Whether the individual participated in available programs for sexual offenders.

(3)      Characteristics of the individual, including:

(i)      Age of the individual.

(ii)     Use of illegal drugs by the individual.

(iii)    A mental illness, mental disability or mental abnormality.

(iv)     Behavioral characteristics that contribute to the individual's conduct.

(4)      Factors that are supported in sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.58(b).

Instantly, Appellant pled guilty to sexually violent offenses.  ***See*** 42 Pa.C.S.A. §§ 9799.12, 9799.14.  In her report, Dr. Dudley, a SOAB member, addressed all factors set forth in Section 9799.58(b).  (***See*** SVP Assessment, dated 12/19/19, at 5-8).  Regarding Appellant's mental abnormality, Dr. Dudley indicated that Appellant met the diagnostic criteria for Paraphilic Disorder Specified, Hebephilic Disorder:

Based on his behavior and his statements to law enforcement he has a sexual attraction to adolescent children.  He has also acted on this attraction by initiating and then sexualizing conversations with N.N., a 14-year-old girl.  He searched the Internet for websites showing naked adolescents and/or adolescents having sex with men.

(***Id.*** at 7). This disorder "is considered a lifetime 'condition' which may wax and wane over time," and Appellant "has a higher likelihood of re-offending unless or until he receives specialized treatment…." (***Id.*** at 8). Dr. Dudley also opined that Appellant engaged in predatory behavior:

> [Appellant] initiated and maintained a private relationship with 14-year-old [N.N.] During the course of online conversations with her he sent her pictures of his erect penis and received pictures of [her] vagina, which he then used as masturbatory stimulus. This behavior does meet criteria, under the statute, to be deemed **PREDATORY**.

(***Id.*** at 9) (emphasis in original). At the SVP hearing, Dr. Dudley provided testimony that was consistent with the findings announced in her report. (***See*** N.T. SVP Hearing, 1/19/22, at 17-85).

The trial court analyzed Dr. Dudley's report, as well as her testimony from the SVP hearing, and determined that the Commonwealth provided clear and convincing evidence to support the SVP classification:

> [The trial court] finds that Dr. Dudley thoroughly considered the requisite statutory factors … as they relate to the circumstances surrounding the instant case. She assessed and pointed to several statutory factors that increased Appellant's likelihood of reoffending, such as the fact that Appellant's offenses involved multiple victims, the nature of Appellant's contact with the Victim, his repeated requests for nude photos from her, the age of the Victim, as well as the age of the children in the photographs who were being sexually abused by adults. Dr. Dudley also determined that Appellant's statements as to why he chose to work the night shift and when children should be permitted to engage in

sexual relationships to be significant.[6] We find, then, that while Appellant does not have a prior criminal record and he did not use overt force or coercion in the commission of his crimes, Dr. Dudley gave due weight and consideration to the requisite statutory factors as they relate to the circumstances of the instant case.

(Trial Court Opinion at 27-28) (internal record citations omitted).

Here, Dr. Dudley's report and testimony confirmed that Appellant suffers from a mental abnormality that makes him likely to re-offend. ***See Leatherbury, supra***. Viewing this evidence in the light most favorable to the Commonwealth, the trial court correctly determined that the Commonwealth presented clear and convincing evidence to support Appellant's classification as an SVP. ***See Hollingshead, supra***. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/2023

_____

[6] Specifically, Dr. Dudley testified about certain statements Appellant made to police during their investigation. Appellant "stated to the police that he liked working the night shift because there were no children around." (N.T. SVP Hearing at 43). Appellant "also made statements about how he believes that children should be allowed to have sexual relationships when they are ready versus waiting for a prescribed age." (***Id.*** at 46).